603 A.2d 1289

**BANCROFT INFORMATION GROUP, INC. et al.,**

**v.**

**COMPTROLLER OF THE TREASURY.**

**No. 810, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

April 6, 1992.

George W. Liebmann, Baltimore, for appellants.

Sheldon H. Laskin, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Deborah B. Bacharach and Gaylin Soponis, Asst. Attys. Gen., on the brief), Baltimore, for appellee.

Argued before MOYLAN, ROSALYN B. BELL and WENNER, JJ.

ROSALYN B. BELL, Judge.

Bancroft Information Group, Inc. is a Maryland Corporation which, since September 1, 1989, has published a bi-weekly publication circulated among the general public, known as *The Maryland Report.* *The Maryland Report*

contains news items, legal and general intelligence, reports of current events, editorial comments, advertising matter and other miscellaneous information of public interest. Bruce Bortz is President and sole owner of Bancroft. Bancroft and Bortz together are the appellants in the instant case.

Although he was advised by appellee, the Comptroller of the Treasury, that the publication did not qualify as a newspaper and was thus subject to sales tax under the provisions of COMAR .03.06.01.04 [1] (the regulation), Bancroft nevertheless filed with the Comptroller a refund application relating to the four previous quarters of sales tax. Bancroft attached to its refund application—which was founded on the "constitutional invalidity of tax as applied to newspaper publishers under *Arkansas Writers' Project v.*

---

1.  COMAR 03.06.01.04 reads:
     "04.  Newspapers.
     "A.  The sale of newspapers is not subject to the [sales] tax.
     "(1)  A publication is not a newspaper unless:
     (a)  It is published and distributed no less frequently than once each week;
     (b)  It does not, when its successive issues are put together, constitute a book;
     (c)  It is intended for circulation among the general public;
     (d)  It contains news items, legal and general intelligence, reports of current events, editorial comments, advertising matter, and other miscellaneous information of public interest generally found in the ordinary newspaper.
     "(2)  The criteria set forth in § A(1), above, are minimum requirements, the meeting of which does not necessarily result in a publication being classified as a newspaper.  A publication which meets the criteria set forth in § A(1), above, but which is in fact a magazine, shopping advertiser, community newsletter, tip sheet, or other publication which is not a newspaper in the common and popularly-accepted usage of the term, is not a newspaper for the purpose of this exemption.  A publication is not disqualified solely because it is devoted primarily to matters of specialized interest, such as legal, mercantile, political, religious, or sporting matters.
     "(3)  The sale of an item which is to be distributed as a component part of a newspaper, such as an advertising supplement, is not subject to the tax.
     "B.  The taxability of sales of photographic materials and certain other tangible personal property used in the printing of newspapers is described in Regulation .11."

*Ragland,* 481 U.S. 221, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987)," [2]—copies of the quarterly tax returns in question.

The Comptroller returned the application to Bancroft with a request that additional information be supplied within 45 days. Bancroft and Bortz instead brought suit in the Circuit Court for Anne Arundel County. Bancroft's and Bortz's complaint alleged that the Comptroller was acting beyond the scope of his authority in enacting the regulation. Bancroft and Bortz also alleged First Amendment violations by the Comptroller and asked for damages equal to the amount of sales tax Bancroft had paid, injunctive relief to halt further implementation of the regulation, and attorney's fees under 42 U.S.C. § 1988 (1989).

Count 1 of appellants' complaint alleged that the regulation was *ultra vires* the authority of the Comptroller. Count 2 alleged that the regulation violated the First Amendment and Equal Protection clause of the United States Constitution. Count 3 alleged deprivations of constitutionally protected personal and property rights under 42 U.S.C. § 1983 (1986) and attorney's fees under § 1988. Each of these counts incorporated by reference the allegations contained in all other counts.

The circuit court granted the Comptroller's Motion to Dismiss on the grounds that Bancroft and Bortz had not exhausted their administrative remedies. The circuit court also stayed any determination of constitutionality of the statute pending the exhaustion of administrative remedies. Bancroft and Bortz have appealed, contending:

—the circuit court erred in staying a facial attack on a regulation asserted to violate the First Amendment;

—the circuit court erred in dismissing on exhaustion grounds an attack on regulations affecting First

---

**2.** In *Arkansas Writers' Project v. Ragland,* 481 U.S. at 223, 107 S.Ct. at 1724, the Supreme Court was asked to decide, "whether a state sales tax scheme that taxes general interest magazines, but exempts newspapers and religious, professional, trade, and sports journals, violates the First Amendment's guarantee of freedom of the press."

Amendment rights asserted to be *ultra vires* any statutory authorization;

—a regulation according the Comptroller discretion to determine what constitutes a nontaxable newspaper violates the First Amendment; and

—the periodicity requirement in the State regulation violates the First Amendment.

We prefer to rephrase the issues appellants' raise and will address them as follows:

—the First Amendment challenge to the regulation and the Comptroller's authority to promulgate that regulation;

—appellants' § 1983 cause of action [3]; and

—the exhaustion of administrative remedies requirement and the circuit court's disposition of the case.

We will hold that appellants were not required to exhaust their administrative remedies before making a First Amendment challenge to the regulation. In reviewing the portion of the regulation upon which the Comptroller based his decision, we find it to be constitutional. Furthermore, we hold that appellants are required to exhaust their administrative remedies prior to bringing any additional causes of action in the circuit court. We explain.

## THE FIRST AMENDMENT

Appellants' challenges to the regulation and the Comptroller's exercise of authority in implementing it revolve

---

**3.** 42 U.S.C. § 1983 provides a civil action for deprivation of rights. It provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

around what appellants consider to be the regulation's infringement on their First Amendment rights.[4] Specifically, appellants attack the grant of discretion in the regulation to the Comptroller to determine what constitutes a taxable newspaper. Appellants also attack the periodicity (frequency of publication) requirement of the regulation.

The circuit court stayed further proceedings on appellants' action with respect to the First Amendment challenges to the regulation, pending appellants' exhaustion of all other claims. In delivering its ruling, the court declared:

"COURT: Well, of course, unfortunately I've probably had too much exposure to this type of case before. I did have another one very similar with the Pennysaver and got to read all of those Supreme Court cases on the question, but what it really boils down to I think is that the—I think under the existing law the comptroller does have a right to have regulations with regard to what is or isn't a newspaper. He also can promulgate those regulations so they apply, and, of course, a publication has the right to contest that, but before you contest it, I think you have to establish yourself as a—as fitting within the category of something that's been denied. We don't even have anything here where there's been a refund claim made and denied. All it was sent back for further information, and so I think what you're really asking for is a premature advisory opinion as to whether this category of bi-weekly publication is—is unconstitutionally being denied it status as a newspaper, but I think there's certainly some other thing that or some other basis that the comptroller could find that might be a reason for his denial of your status as a newspaper. I don't think you call yourself a newspaper. You call yourself a bi-weekly newsletter. You have volumes and issues that apparently appear to be of a nature to be put together as a book

---

**4.** The First Amendment to the United States Constitution guarantees basic freedoms of speech, religion, press, and assembly and the right to petition the government for redress of grievances.

which is another requirement that it not be, and so there are a lot of things that are at issue here other than the fact that it's a bi-weekly publication, and I'm not going to make a preliminary advisory decision or allow anyone to jump ahead of the process that requires some kind of a evidentiary hearing after a denial. Of course, the comptroller may say you're all right, once you file a—whatever supporting documentation he says you should, and that's his privilege, but I don't think it's for the courts to intervene at this point so I think it's premature and will grant the Motion to Dismiss.

"[ASSISTANT ATTORNEY GENERAL]: Thank you, Your Honor.

"COURT: I will stay the portion about the facial constitutional challenge if you want to just keep that open while you determine whether or not you're a newspaper or otherwise.

"[ASSISTANT ATTORNEY GENERAL]: Your Honor, then I assume you're dismissing on the exhaustion ground and not the ripeness ground?

"COURT: Yeah.

"[ASSISTANT ATTORNEY GENERAL]: Okay.

"[APPELLANTS' COUNSEL]: Do I understand Your Honor's ruling is that the counts other than the facial constitutionality are dismissed and the facial constitutionality is stayed?

"COURT: Stayed pending the determination of whether every other category of qualification as a newspaper is approved. First of all, you've got to have some kind of a denial or exhaustion of administrative remedy. Somebody has to do something."

■■■ The issuance of a stay lies "within the sound discretion of the trial court" and will not be disturbed on appeal absent an abuse of that discretion. *Dodson v. Temple Hill Baptist Church, Inc.* 254 Md. 541, 546, 255 A.2d 73 (1969). In the instant case, the circuit court stayed the determination of the constitutional issues, pending the

exhaustion of administrative remedies. Where First Amendment interests are raised, however, they must be vindicated prior to the disposition of other claims. *Dombrowski v. Pfister*, 380 U.S. 479, 486, 85 S.Ct. 1116, 1120, 14 L.Ed.2d 22 (1965).[5] In addition, where differential taxation implicates the First Amendment the case becomes constitutionally suspect. Courts are then required to look for suppression of the expression of particular ideas or viewpoints. *Leathers v. Medlock*, —— U.S. ——, 111 S.Ct. 1438, 113 L.Ed.2d 494 (1991). Absent a compelling justification, the government may not exercise its taxing power to single out a small group of the press. *Leathers*, 111 S.Ct. at 1443. *See also Grosjean v. American Press Co.*, 297 U.S. 233, 244–49, 56 S.Ct. 444, 446–49, 80 L.Ed. 660 (1936). Ordinarily, we would remand this case to the circuit court for a disposition of the First Amendment issues. We choose, however, in the interest of judicial economy and to avoid the possibility of another appeal, to address the First Amendment issues raised by appellants. Rule 8–131(a); *Aetna Cas. & Sur. Co. v. Brethern Mut. Ins. Co.*, 38 Md.App. 197, 214, 379 A.2d 1234 (1977).

■ Appellants contend that the regulation on its face is violative of their First Amendment rights. They argue that the regulation allows the Comptroller too much discretion to decide what qualifies as a newspaper and is thus exempt from the sales tax. Appellants in their brief complain:

"Neither Maryland Report nor other aspiring publishers can do more than guess at what about it, other than its periodicity, offends the Comptroller. Perhaps the paper it is printed on is not flimsy enough.... Perhaps

---

5. In general, taxpayers must exhaust their state administrative remedies prior to bringing a § 1983 cause of action for allegedly unlawful state tax assessments. *Fair Assessment in Real Estate Association v. McNary*, 454 U.S. 100, 108, n. 5, 102 S.Ct. 177, 181, n. 5, 70 L.Ed.2d 271 (1981). There are, however, exceptions to this rule. Where a § 1983 action is raised in conjunction with a First Amendment challenge, the court may not require exhaustion of administrative remedies prior to the disposition of the constitutional challenge. *See Narumanchi v. Board of Trustee of Conn. State Univ.*, 850 F.2d 70 (2d Cir.1988).

it omits too many of the typical contents of a true newspaper—reports of Women's Sodality meetings, information about the fishing season for pickerel and the bounty paid for porcupine ears, recipes for Calvert County turnip soup, and advertisements of execution sales." [6]

Appellants rely on *Arkansas Writers' Project*, 481 U.S. at 221, 107 S.Ct. at 1723, to bolster their position that the regulation violates the First Amendment. We disagree.

The Supreme Court faced a similar set of facts in *Arkansas Writers' Project*. In that case, Arkansas had imposed a tax on receipts from sales of tangible personal property, but exempted numerous items, including newspapers and some magazines, such as "religious, professional, trade and sports journals." The Arkansas Writers' Project, Inc. (Writers) published a general interest monthly magazine, *Arkansas Times*, with a circulation of approximately 28,-000. The magazine included articles on a variety of subjects, including religion and sports. The Commissioner of Revenue of Arkansas (Commissioner) refused the Writers refund application. The Arkansas State Chancery Court granted the Writers summary judgment, construing the magazine exemption to include *Arkansas Times*. The Arkansas Supreme Court reversed, holding that the magazine exemption applied only to religious, professional, trade, or sports periodicals. The United States Supreme Court reversed the Arkansas Supreme Court, holding that the Arkansas sales tax scheme was unconstitutional because of its "selective application" to magazines. *Arkansas Writers' Project*, 481 U.S. at 233, 107 S.Ct. at 1729. After examining how the Arkansas tax was directed at what was printed in the periodical, the Court held that Arkansas "has advanced no compelling justification for selective, content-based taxation of certain magazines." *Arkansas Writers'*

---

**6.** While appellants may consider this reference to typical contents of a newspaper cute and clever, we do not see it that way. Appellants' use of language such as this both trivializes the seriousness of their own case and ridicules the worthwhile efforts of charitable associations, such as Women's Sodality groups.

*Project,* 481 U.S. at 234, 107 S.Ct. at 1730. Admittedly, *Arkansas Writers' Project* possesses some similarities to the case now before us. We hold, however, that it is distinguishable.

In the instant case, the Comptroller returned appellants' refund application with a request for additional information. Prior to the return of the refund application, the Comptroller, in November, 1988, informed appellants by letter that the Maryland Report would not qualify as a newspaper for the sales tax exemption. The Comptroller wrote in pertinent part:

"A definition of the term 'newspaper' is provided in Sales Tax Regulation .05, a copy of which is enclosed herewith. Among other things, the regulation has a threshold requirement that a publication must be published and distributed no less frequently than once each week in order to be a newspaper. This is a requirement which the legislature has·specifically considered on a number of occasions in recent years but declined to alter.

"Since your proposed publication will not meet the frequency of publication requirement of the regulation, it will not be a newspaper for sales tax purposes."

Additional correspondence between appellants and the Comptroller, presented as exhibits at trial, focused on the frequency of publication requirement of the regulation.

Therefore, unlike *Arkansas Writers' Project,* the denial of the refund in this case was based, not on what was published in the newsletter, but on how many times it was circulated. Here, the Comptroller did not determine *The Maryland Report's* tax status based on its content—which the Supreme Court found constitutionally offensive in *Arkansas Writers' Project.* Instead, he based his determination on how many times it was published. This is a content-neutral criteria, which does not "restrict expression because of its message, its ideas, its subject matter or its content." *Arkansas Writers' Project,* 481 U.S. at 229, 107 S.Ct. at 1727, quoting *Police Dept. of Chicago v. Mosley,* 408 U.S. 92, 95, 92 S.Ct. 2286, 2289, 33 L.Ed.2d 212 (1972). Thus, it does not raise the same type of constitutional suspicion.

In determining whether a tax violates the First Amendment, the Supreme Court looks for "[r]egulations which permit the government to discriminate on the basis of the content of the message." *Arkansas Writers' Project*, 481 U.S. at 230, 107 S.Ct. at 1728. "The First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic." *Consolidated Edison Co. v. Public Serv. Comm'n of New York*, 447 U.S. 530, 537, 100 S.Ct. 2326, 2333, 65 L.Ed.2d 319 (1980). Thus, the test becomes whether the tax is directed at the content or ideas espoused by the publication or whether it is content-neutral.

In *Leathers*, which was a challenge to the Arkansas tax on cable television, the Supreme Court concluded

"that differential taxation of speakers, even members of the press, does not implicate the First Amendment unless the tax is directed at, or presents the danger of suppressing, particular ideas. That was the case in *Grosjean, Minneapolis Star [& Tribune Co. v. Minnesota Comm'r of Revenue*, 460 U.S. 575, 103 S.Ct. 1365, 75 L.Ed.2d 295] [ (1983) ], and *Arkansas Writers'*, but it is not the case here. The Arkansas Legislature has chosen simply to exclude or exempt certain media from a generally applicable tax. Nothing about that choice has ever suggested an interest in censoring the expressive activities of cable television. Nor does anything in this record indicate that Arkansas' broad-based, content-neutral sales tax is likely to stifle the free exchange of ideas. We conclude that the State's extension of its generally applicable sales tax to cable television services alone, or to cable and satellite services, while exempting the print media, does not violate the First Amendment."

*Leathers*, —— U.S. at ——, 111 S.Ct. at 1447.

There is nothing in the record of the case now before us to indicate that the frequency of publication requirement in the regulation is directed toward the suppression of ideas.

It merely requires that a publication be "published and distributed no less frequently than once each week" before it can qualify for tax exempt status as a newspaper. We hold, therefore, that the frequency of publication requirement, upon which the Comptroller based his decision to deny appellants' refund, passes constitutional muster.

## APPELLANTS' § 1983 CHALLENGE

■ Count 3 of appellants' original Complaint asserts a claim under 42 U.S.C. § 1983. Appellants argue that, as a matter of federal law, states cannot generally require litigants to exhaust administrative remedies prior to filing a claim in state court seeking relief under 42 U.S.C. § 1983 for violation of federal rights. *Felder v. Casey*, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988). Appellants have, however, incorrectly interpreted the law.

In *Patsy v. Florida Board of Regents*, 457 U.S. 496, 502–07, 102 S.Ct. 2557, 2560–63, 73 L.Ed.2d 172 (1981), the Supreme Court discussed at length the historical background of § 1983. Quoting *Ex Parte Virginia*, 100 U.S. 339, 346, 25 L.Ed.2d 676 (1880), the Court said:

"The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, or judicial.'"

After a complete review of the history of § 1983, the Supreme Court concluded in *Patsy*, 457 U.S. at 507, 102 S.Ct. at 2563:

"This legislative history supports the conclusion that our prior decisions, holding that exhaustion of state administrative remedies is not a prerequisite to an action under § 1983, did not misperceive the statutory intent: it seems fair to infer that the 1871 Congress did not intend that an individual be compelled in every case to exhaust state administrative remedies before filing an action under § 1 [the predecessor to § 1983] of the Civil Rights Act."

The Comptroller argues that either a state or a federal court can, in the context of a tax case, require exhaustion of administrative remedies prior to the hearing of a § 1983 challenge. The Comptroller bases his conclusion on *Fair Assessment in Real Estate Association v. McNary,* 454 U.S. 100, 102, 102 S.Ct. 177, 179, 70 L.Ed.2d 271 (1981). The Supreme Court in *McNary* addressed the issue of whether a damages action could be brought in federal court under § 1983 to redress an allegedly unconstitutional administration of Missouri's tax system. The Court contrasted the well-established policy calling for restraint by the federal court in deciding cases that affect state tax systems with the § 1983 policy enunciated in *Patsy,* that actions may be brought in federal court without first exhausting state administrative remedies. The Court ultimately held that the principle of comity [7] barred state taxpayers from asserting § 1983 action in federal court prior to the exhaustion of state administrative remedies. *McNary,* 454 U.S. at 105, 102 S.Ct. at 180. This holding acknowledges the appropriateness of resolving § 1983 tax claims according to the procedures established by the states, including exhaustion of administrative remedies. *McNary,* 454 U.S. at 108, n. 5, 102 S.Ct. at 181.

*McNary* involved a *federal* court challenge to a *state's* administration of its own tax scheme. The instant case, on the other hand, involves a *state* court challenge to a *state* tax system, where the principle of comity does not apply. The question thus presented is whether the *McNary* rationale applies in these circumstances. While no Maryland decisions have resolved the issue, the Supreme Court of Oregon recently addressed it in *Nutbrown v. Munn,* 311 Or. 328, 811 P.2d 131 (1991), stating that the holding in *McNary*

---

7. The principal of comity is the granting of deference or respect by one jurisdiction to another. Thus, the federal courts defer to the state courts where the states provide a "plain, speedy and efficient" remedy. *Strescon Industries, Inc. v. Cohen,* 664 F.2d 929, 930 (4th Cir.1981).

"does not mean that a *state* must, as a matter of federal law, impose a similar exhaustion requirement before it permits *its* courts to entertain such actions; neither Congress nor the federal courts has purported to control state trial procedure in such a way. What it does mean, we believe, is that a state *may* impose such a requirement *without offending* federal law." (Emphasis in original) *Nutbrown,* 811 P.2d at 138. Thus, under this reasoning, the state may, in a § 1983 action, require a complaining taxpayer first to exhaust available state administrative remedies. This is in keeping with the notions of judicial efficiency and economy.

We find the reasoning of the Oregon Court to be persuasive. The requirement that taxpayers exhaust their administrative remedies, prior to filing in court, allows the agencies and courts with the most expertise in the state's tax system to resolve a complaint as quickly as possible. *Dows v. Chicago,* 78 U.S. (11 Wall.) 108, 110, 20 L.Ed. 65 (1871).

## THE STAY

Appellants also contend that the circuit court erred in granting a stay on the constitutional questions, pending their exhaustion of administrative remedies. Appellants argue that the net effect of the stay is to compel them to litigate factual issues through two administrative agencies—the Comptroller and the Tax Court—which would result in substantial expenditure. Appellants claim this is especially onerous in light of the fact that the circuit court or this Court may ultimately find the tax regulations unconstitutional. Since, however, we have determined that the portion of regulation upon which the Comptroller based its decision is constitutional on its face, we need not discuss any further the effect of the stay on appellants' constitutional challenge.

Appellants also argue that the circuit court erred in dismissing, on exhaustion grounds, their attack on the

Comptroller's discriminatory administration of the regulation. Appellants rely on *State Department of Assessments v. Clark*, 281 Md. 385, 404–05, 380 A.2d 28 (1977), to bolster their position that, when a statute is being administered in a discriminatory fashion and the agency was afforded an opportunity to abate the discrimination, the statute could then be attacked by a declaratory judgment. Appellants claim that they did not go directly to court, but called upon the Comptroller, by both refund application and letter, to correct the discrimination and adopt a proper, nondiscriminatory regulation. Appellants claim that both the refund application and the letter were met with unresponsive replies and, therefore, exhaustion of administrative remedies is not required under *Clark*. Appellants' reliance on *Clark*, however, is misplaced.

The law governing the appeal of tax cases is well settled. The Maryland Uniform Declaratory Judgment Act, which is found in Md.Cts. & Jud.Proc.Code Ann. § 3–409(b) (1974, 1989 Repl.Vol.), specifically provides:

"If a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle."

Section 13–514 of Md.Tax–Gen.Code Ann. (1988) states:

"Unless a person has exhausted all available administrative remedies before the appropriate tax determining agency, the person may not appeal to the Tax Court."

Also, Md.Tax–Gen.Code Ann. § 13–505 (1988) provides:

"A court may not issue an injunction, writ of mandamus, or other process against the State or any officer or employee of the State to enjoin or prevent the assessment or collection of a tax under this article."

Section 13–505, read in conjunction with § 13–514 and § 3–409(b) of the Cts. & Jud.Proc. Article, demonstrates the Legislature's intent that tax disputes be resolved through the procedures established in Md.Tax–Gen.Code Ann. §§ 13–510 through 13–529 (1988). *Clark* merely held that, when an administrative agency provides a wholly discretion-

ary, non-reviewable procedure by which an aggrieved citizen may request relief from agency action, the requirement of administrative exhaustion is fully met by invoking that procedure. If the agency then refuses to grant the citizen relief, a declaratory judgment action may immediately be commenced, attacking the regulation. *Clark,* 281 Md. at 404, 380 A.2d 28. *Clark,* stated:

> "[W]here there is a full opportunity ... to protest ... to administrative agencies and adequate provisions for judicial review of the agencies' action, a court shall not take jurisdiction unless the administrative remedies have been exhausted...."

*Clark,* 281 Md. at 404, 380 A.2d 28. Thus, under the holding in *Clark,* administrative exhaustion is required prior to judicial review of agency action.

JUDGMENT AFFIRMED. CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY WITH INSTRUCTIONS TO REMAND THE CASE TO THE APPROPRIATE ADMINISTRATIVE AGENCY. COSTS TO BE PAID THREE–FOURTHS BY APPELLANTS AND ONE–FOURTH BY APPELLEE.