reuters 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,


AT AUSTIN



 



NO. 3-93-124-CV



REUTERS AMERICA, INC.,


 
 APPELLANT


vs.



 JOHN SHARP, COMPTROLLER OF PUBLIC ACCOUNTS OF 


THE STATE OF TEXAS, MARTHA WHITEHEAD, TREASURER OF 


THE STATE OF TEXAS, AND DAN MORALES, ATTORNEY GENERAL 


OF THE STATE OF TEXAS,



 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT



NO. 91-5430, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING



 





 Reuters America, Inc. ("Reuters") challenges the constitutionality of the state tax
scheme that taxes information services and exempts newspapers. See Tex. Tax Code Ann.
§§ 151.0101(10), .038(a), .319(a),(f) (West 1992) ("Tax Code"); 34 Tex. Admin. Code § 3.342
(1994). The Comptroller taxed Reuters as an information service, and Reuters filed a tax protest
suit and declaratory judgment in district court. See Tax Code § 112.051. Reuters appeals the
judgment in favor of the State, arguing that the information services tax and the newspaper
exemption violate the free speech and equal protection clauses of the federal and state
constitutions. U.S. Const. amend. I, XIV; Tex. Const. art. I, §§ 3, 8. We will uphold the
constitutionality of the tax and affirm the trial-court judgment. 



BACKGROUND


 Reuters provides electronic news services to its subscribers. Each service reports
news on a particular topic, such as energy, commodities, mortgages, or equity markets. General
news relating to political events, sports events, weather, and human interest stories are also
included within each particular service. (1) Reuters employs reporters who gather and write the
news for its subscribers. Subscribers receive this news through their computer systems by satellite
or telephone lines. They contract with Reuters on a yearly basis and are billed quarterly or
monthly for these services. The service is available to subscribers seven days a week, twenty-four
hours a day. 

 The Texas Comptroller of Public Accounts (the "Comptroller") audited Reuters and
determined that it owed additional taxes based on its classification as an information service under
the Tax Code. (2) See Act of July 21, 1987, 70th Leg., 2d C.S., ch. 5, art. 1, pt. 4, § 5, 1987 Tex.
Gen. Laws 9, 11 (Tax Code § 151.0038, since amended). The bulk of this additional tax came
from taxation on Reuters' energy services, domestic money services, and international money rate
services. After an administrative hearing upholding the tax assessment, Reuters paid $318,819.22
under protest.

 Reuters then filed a tax protest suit in district court to recover the amount paid,
arguing in its petition that the information services tax and the newspaper exemption violated the
First Amendment and Article I, § 8 of the Texas Constitution. The parties agreed to a joint
stipulation of facts, and the State and Reuters then moved for partial summary judgment on the
constitutionality of the tax scheme. Reuters added in its motion that the tax scheme also violated
the state and federal equal protection clauses. The district court granted the State's motion and
denied Reuters' motion. Because the parties did not dispute the amount of the tax assessed, the
court rendered final judgment in favor of the State.



DISCUSSION


 We must determine whether a tax scheme that taxes Reuters as an information
service while exempting newspapers violates Reuters' constitutional rights under the free speech
and equal protection clauses of the state and federal constitutions. Reuters argues that the Texas
Constitution provides even broader protection under its free speech and equal protection
provisions than the federal constitution. Moreover, Reuters argues that the tax provisions are
unconstitutional on their face and as applied.

 In determining the constitutionality of a statute, there is a strong presumption of
its validity; moreover, tax legislation receives special deference. Vinson v. Burgess, 773 S.W.2d
263, 266 (Tex. 1989). Reuters essentially challenges the legislature's creation of different
classifications within its tax scheme. Tax classification decisions are ordinarily afforded broad
discretion. See Regan v. Taxation With Representation, 461 U.S. 540, 547 (1983). However,
in determining classifications, the legislature may not create categories that suppress the
expression of particular ideas or viewpoints. See Leathers v. Medlock, 499 U.S. 439, 447 (1991).

 If the tax classification raises free speech concerns by threatening to suppress the
expression of particular ideas or viewpoints, then the tax is constitutionally suspect and becomes
subject to strict scrutiny, thus requiring the state to offer a compelling justification for the tax. 
See id. If the fundamental right of free speech is not infringed, then equal protection analysis
requires that the classification be rationally related to a legitimate state interest. See Spring
Branch Indep. Sch. Dist. v. Stamos, 695 S.W.2d 556, 559 (Tex. 1985), appeal dismissed, 475
U.S. 1001 (1986) ("When the classification created by a state regulatory scheme neither infringes
upon fundamental rights nor burdens an inherently suspect class, equal protection analysis requires
that the classification be rationally related to a legitimate state interest.").


 In light of this standard, we first review the basic framework of the tax scheme. 
The broad-based sales tax at issue in this case attaches to each sale of a taxable item in the state,
comprising both tangible personal property and taxable services. See Tax Code §§ 151.010,
.0101, .051. The scheme taxes some members of the press while exempting others. Newspapers,
magazines, and broadcasts by commercial radio or television are exempt from the tax. Id.
§§ 151.319(a), .320(a), .323(3). However, the Tax Code classifies information services, cable
television, and telecommunications as taxable services. Id. §§ 151.0101(a)(2), (6), (10). 

 At the time of the audit, the Tax Code defined "information service" as:



(1) furnishing general or specialized news or other current information,
including financial information, unless furnished to a newspaper of general
circulation published at least as frequently as weekly or to a radio or
television station licensed by the Federal Communications Commission; or


(2) electronic data retrieval or research.



Act of July 21, 1987, 70th Leg., 2d C.S., ch. 5, art. 1, pt. 4, § 5, 1987 Tex. Gen. Laws 9, 11
(Tax Code § 151.0038, since amended). (3) Reuters argues that it was taxed under subsection (1). 
Both parties agree that Reuters conceded at the administrative hearing that it fell within the
definition of information services under subsection (1). The State argues, however, that while
Reuters may fall under subsection (1), it also falls under subsection (2) as an electronic data
retrieval service. 

 The Comptroller's decision attached to Reuters' original petition does not expressly
state under which provision Reuters was taxed; however, the Comptroller notes that Reuters 



does not challenge the constitutionality of Section 151.0038 of the Texas Tax Code
which defines "information service", as it pertains here, to mean "furnishing
general or specialized news or other current information, including financial
information. . . ." Indeed, the Petitioner concedes that its operations come within
these Statutory provisions. [On exceptions, the Petitioner stresses that it does deny
the Statutes' constitutionality, but realizes that it would be fruitless to pursue that
argument here, given this forum's lack of authority to rule on the issue.]



While this language suggests that Reuters was taxed under subsection (1), the issues in a protest
suit are tried de novo. See Tax Code § 112.154. The State argued in its motion for partial
summary judgment that Reuters was taxable as an electronic data retrieval service under
subsection (2). Thus, in determining Reuters' facial challenge to the statute, we may consider
whether Reuters also falls under subsection (2) as an electronic data retrieval service.

 Although information services are taxed, certain newspapers are exempt under the
Tax Code. At the time of the audit, an exempt newspaper had to meet the following
requirements:



(f) In this section, "newspaper" means a publication that is printed on newsprint,
the average sales price of which for each copy over a 30-day period does not
exceed 75 cents, and that is printed and distributed at a daily, weekly, or
other short interval for the dissemination of news of a general character and
of a general interest. . . . (4)

Act of May 19, 1983, 68th Leg., R.S., ch. 840, § 4, 1983 Tex. Gen. Laws 4769, 4770 (Tax Code
§ 151.319(f), since amended). (5) The definition distinguishes newspapers from other media by
several format requirements concerning the type of paper, the distribution frequency, and price. 
In addition, the definition provides that a newspaper disseminate news of a "general character and
of a general interest." In light of this framework, we first review the challenge to the tax scheme
under the federal and state free speech provisions.



A. Freedom of Speech

 In its first four points of error, Reuters argues that the tax provisions are
unconstitutional on their face and as applied to Reuters under the state and federal free speech
provisions. The First Amendment, as incorporated by the Fourteenth Amendment, prohibits the
states from making laws that abridge the freedom of speech or press. U.S. Const. amend. I, XIV. 
Article I, § 8 of the Texas Constitution provides in part: 



Every person shall be at liberty to speak, write or publish his opinions on any
subject, being responsible for the abuse of that privilege; and no law shall ever be
passed curtailing the liberty of speech or of the press.



Tex. Const. art. I, § 8. In some respects, Article I, § 8 is broader than the First Amendment. 
Davenport v. Garcia, 834 S.W.2d 4, 8 (Tex. 1992). Regardless, Article I, § 8 provides at least
the minimum safeguards afforded by the First Amendment. See id. at 15 ("The only limit on the
states is that, in relying on their own constitutions, they may not deny individuals the minimum
level of protection mandated by the Federal Constitution."). Therefore, we first analyze the tax
under the minimum safeguards afforded by the First Amendment. Should the tax withstand this
analysis, we will then address whether Article I, § 8 is broader than the First Amendment in the
context of tax classifications.



 1. As Applied: The First Amendment

 Reuters contends the tax is unconstitutional as applied because it singles out Reuters
alone among other members of the press. Reuters argues that it is an "electronic newspaper" and
therefore part of the newspaper medium. Reuters notes that the joint stipulation of facts provides
that Reuters' content is the same as that read by subscribers to the Wall Street Journal and that
Reuters gathers and writes the news in the same manner as "newsprint" newspapers. Reuters
argues that because its content is the same as newspapers, the treatment for tax purposes must be
the same. It concludes that the tax thus penalizes select members of the newspaper medium,
violating their freedom of speech.

 We agree that a tax structure cannot penalize select members of the newspaper
medium. See Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue, 460 U.S. 575,
591-92 (1983); Grosjean v. American Press Co., 297 U.S. 233, 251 (1936). However, we do not
believe that Reuters is part of that medium. A medium is a channel, method, or system of
communication. Webster's Third International Dictionary 1403 (Philip B. Gove ed., 1961). 
Reuters and newspapers convey their messages through different means. To receive Reuters'
information, subscribers must use a computer monitor. They must enter into a one to two year
contract to receive the services. The information is conveyed electronically, presented live on a
computer monitor screen, and constantly updated, rather than presented daily in a newspaper.

 The newspaper exemption recognizes the format distinctions with respect to price,
newsprint, and frequency of distribution. These format requirements discriminate on the basis
of medium, that is, on the basis of how the message is conveyed, rather than on the content of the
message. Reuters argues that these format distinctions are meaningless and that the State cannot
permissibly distinguish a newspaper from other media in this way. We disagree.

 The United States Supreme Court held that extending a generally applicable sales
tax to cable television services alone or to cable and satellite services, while exempting the print
media, did not violate the First Amendment. Leathers, 499 U.S. at 453. In making this
determination, the Court noted that the record contained no evidence, nor was it contended, that
cable television offered material that differed systematically from that communicated by satellite
broadcast programming, newspapers, or magazines. Id. at 449. We believe Reuters' service is
similar to the cable industry, which presents information through a medium different than the print
media. That Reuters is taxed differently from other media does not by itself raise First
Amendment concerns. (6) See id. at 444.

 However, a sales tax that targets selected segments of the media becomes
constitutionally suspect when it threatens to suppress the expression of particular ideas or
viewpoints. A tax requires strict-scrutiny review when the tax: (1) is limited to the press alone;
(2) targets a small group of speakers; or (3) discriminates on the basis of the content of the
taxpayer's speech. Id. at 447. Reuters argues that even if it is not part of the newspaper medium,
the tax targets a small group of speakers and, therefore, triggers strict scrutiny.

 Reuters argues that the record reveals that the Texas statute taxes only a few
electronic publishers while the Arkansas tax upheld in Leathers applied to 100 cable television
operators, a number large enough to prevent the danger of censorship. (7) The Court explained in
Leathers that a tax scheme that targets a small number of speakers runs the risk of affecting only
a limited range of views and distorting the market for ideas. Id. at 448. However, in this case,
the electronic media are not the only speakers taxed under the tax scheme. The cable industry and
the telecommunication services are also taxed. See Tax Code §§ 151.0101(a)(2), (6). 
Furthermore, the information services tax does not target only the electronic media, but also a
wide range of other news services. See 34 Tex. Admin. Code § 3.342(a)(2) ("[I]nformation
services" include services furnishing general or specialized news "by printed, mimeographed,
electronic, or electrical transmission, or by utilizing wires, cable, radio waves, microwaves,
satellites, fiber optics, or any other method now in existence or which may be devised. . . ."). 
Thus, the tax does not appear to target a select few members of the press to bear the full burden
of the tax. See Magazine Publishers of Am. v. Department of Revenue, 618 A.2d 1056, 1060 (Pa.
Cmmw. Ct. 1992) (determining that a generally applicable sales tax that exempted newspapers but
not magazines did not single out magazines for special treatment). 

 Moreover, the cases in which the Supreme Court found a state tax scheme to target
a small group within the press involved discrimination within the same medium. An Arkansas
sales tax was held unconstitutional because it targeted a few general interest magazines while
religious, sport, trade, and professional magazines were exempted. Arkansas Writers' Project,
Inc. v. Ragland, 481 U.S. 221, 229 (1987). Similarly, a Minnesota special use tax on ink and
paper was unconstitutional in part because it targeted a small number of newspapers with large
productions while exempting newspapers with smaller productions, which remained under the
annual $100,000 ink and paper consumption exemption. Minneapolis Star, 460 U.S. at 591-92. 
Finally, a tax that fell on newspapers with a circulation of more than 20,000 copies per week
violated the First Amendment. Grosjean, 297 U.S. at 251. As we have already concluded, such
intramedia discrimination is not present here. 

 We conclude that the tax is not constitutionally suspect as applied to Reuters;
therefore, the newspaper exemption's format distinctions are not subject to strict-scrutiny review. 
We hold that the tax scheme as applied does not infringe the First Amendment.




 2. As Applied: Article I, § 8

 Because we have found that, as applied to Reuters, strict scrutiny review is not
triggered under the minimum safeguards provided by the First Amendment, we must now
determine whether Article I, § 8 of the Texas Constitution provides greater protection than the
First Amendment in this context. With respect to the minimum safeguards of Article I, § 8, we
rely on Supreme Court precedent which holds that being taxed differently from other media does
not by itself raise First Amendment concerns. See Leathers, 499 U.S. at 444. Reuters argues that
Article I, § 8 is broader because it prohibits tax laws that, as applied, discriminate among
members of the press whether of the same medium or different media. Reuters essentially argues
that unequal taxation of different members of the media based on format requires strict-scrutiny
review under Article I, § 8.

 The Texas Supreme Court has held that, in some respects, our state's free speech
clause is broader than the First Amendment. Ex parte Tucci, 859 S.W.2d 1, 5 (Tex. 1993); 
Davenport, 834 S.W.2d at 8. Article I, § 8 provides:



Every person shall be at liberty to speak, write, or publish his opinions on any
subject, being responsible for the abuse of that privilege; and no law shall ever be
passed curtailing the liberty of speech or of the press. In prosecutions for the
publications of papers, investigating the conduct of officers, or men in public
capacity, or when the matter published is proper for public information, the truth
thereof may be given in evidence. And in all indictments for libels, the jury shall
have the right to determine the law and the facts, under the direction of the court,
as in other cases.



The language of Article I, § 8 is broader than the First Amendment. It grants an affirmative right
to individuals to speak, write, or publish their opinions, but holds the speaker responsible for the
abuse of this privilege. In considering the broader guarantee of Article I, § 8, the Texas Supreme
Court stated, "The presumption in all cases under section eight is that pre-speech sanctions or
`prior restraints' are unconstitutional." Davenport, 834 S.W.2d at 9. Thus, the broader
protection provided in the language of Article I, § 8 appears to address laws that enjoin speech
altogether.

 However, economic regulation in the form of tax classifications under a generally
applicable sales tax does not operate as a prior restraint on Reuters' speech. (8) Therefore, we
believe that with respect to tax classifications under a generally applicable sales tax, Article I, § 8
is no broader than the First Amendment guarantee. The federal test adopted by the United States
Supreme Court provides adequate protection for the press and recognizes the balance between the
legislature's broad discretion in making tax classifications and the right of the press not to have
classifications that suppress the expression of particular ideas or viewpoints. This balance is
appropriate for tax laws, which are afforded special consideration. See Vinson, 773 S.W.2d at
266. Therefore, we hold that the tax as applied to Reuters did not violate its rights under Article
I, § 8 of the Texas Constitution. 



 3. Facial Challenge

 Reuters argues that the tax provisions are invalid on their face because they are
content based. The newspaper exemption defines a newspaper in part as disseminating "news of
a general character and of a general interest." Tax Code § 151.319(f). Under subsection (1), an
information service is defined in part as a service which furnishes "general or specialized news
. . . including financial information." Tax Code § 151.0038(1). The State argues that Reuters
falls under section 151.0038(2) as an electronic data retrieval service, which makes no reference
to content, and therefore we need not address this constitutional issue. The State also argues that
the format requirements of the newspaper exemption were the sole basis for Reuters' taxation. 
 

 We must determine whether Reuters may make a facial challenge to tax provisions
that we conclude were constitutionally applied to Reuters. In its argument that the tax scheme was
unconstitutional as applied, Reuters argues that its speech is the same as newsprint newspapers,
and that it has been taxed because of the format distinctions in the newspaper exemption. 
Moreover, the joint stipulation of facts provides that subscribers receive general news in any
particular service subscribed. Therefore, Reuters does not argue the tax has been applied against
it based on the content of its speech.

 Reuters has standing to challenge the newspaper exemption because a live
controversy exists over the right to recover $318,819.22 paid by Reuters under a tax scheme it
alleges is unconstitutional. See Texas Monthly, Inc. v. Bullock, 489 U.S. 1, 8 (1989). However,
we limit this facial challenge to the newspaper exemption as it operates with electronic data
retrieval services under section 151.0038(2). We do not consider a facial challenge to the
newspaper exemption as it operates with an information service defined in subsection (1) as
furnishing general or specialized information. 

 Reuters argues in its ninth and tenth points of error that the Tax Code precludes
consideration of its claims under section 151.0038(2). Section 112.053 of the Tax Code states
that issues in a protest suit are "limited to those arising from the reasons expressed in the written
protest as originally filed." Tax Code § 112.053. Reuters' protest letter attacks the
constitutionality of subsection (1), not subsection (2). Reuters concludes that the State cannot
argue the applicability of section 151.0038(2), relying on Nu-Way Oil Co. v. Bullock, 546 S.W.2d
336 (Tex. Civ. App.--Austin 1976, no writ).

 In Nu-Way Oil, this Court held that one of the purposes of the protest statute is to
prevent taxpayers, after filing suit, from asserting other or different grounds from those stated in
the protest. 546 S.W.2d at 341. The protest statute prevents a taxpayer from "taking advantage
of the collection agency upon such trial by `changing horses,' so to speak, and having adjudicated
grounds or reasons which the agency had not therefore been called upon or had opportunity to
determine." Id. Reuters argues this principle of fairness prevents the State from raising the
applicability of section 151.0038(2) and unfairly surprising the taxpayer. We disagree. 

 In Nu-Way Oil, we concluded that the essential purpose of a written protest is to
give the Comptroller an opportunity to review the reasons given for the protest and, if the protest
is rejected, to defend a suit by the taxpayer upon the issues raised in the written protest. Id. The
parties do not dispute that Reuters is subject to the tax as an information service; the issue is the
constitutionality of the tax. The applicability of section 151.0038(2) is a defense by the State in
response to Reuters' protest letter in order to limit the scope of constitutional inquiry of the tax
scheme. 

 Issues in a tax protest suit are tried de novo. Tax Code § 112.154. The State
argued in its motion for partial summary judgment that Reuters was taxable as an electronic data
retrieval service; therefore, the issue of the applicability of section 151.0038(2) was properly
before the court. The trial court granted the State's motion on all grounds. Based on the joint
stipulation of facts, the trial court could properly conclude that Reuters was equally taxable as an
electronic data retrieval service. (9)
 We overrule the ninth and tenth points of error, and consider
Reuters' facial challenge to the newspaper exemption as it relates to electronic data retrieval
services under section 151.0038(2). 

 Official scrutiny of the content of publications as the basis for imposing a tax is
totally incompatible with the First Amendment guarantee of freedom of the press. Arkansas
Writers' Project, 481 U.S. at 230; see also Simon & Schuster, Inc. v. Crime Victims Bd., 116
L.Ed. 2d 476, 486-87 (1991). In Arkansas Writers' Project, the Supreme Court held that the sales
tax on general interest magazines was content based. Under that tax scheme, an enforcement
authority had to "necessarily examine the content of the message that is conveyed" in order to
determine whether a magazine was subject to the sales tax. Arkansas Writers' Project, 481 U.S.
at 230. In contrast, the tax on electronic data retrieval services does not permit the Comptroller
to discriminate on the basis of content. 

 The basis for the different tax treatment of electronic data retrieval services and
newspapers rests on the format requirements of the newspaper exemption. The Iowa Supreme
Court rejected a facial challenge to its tax scheme by various magazine publishers who argued the
newspaper exemption was content based. See Hearst v. Iowa Dep't of Revenue & Fin., 461
N.W.2d 295, 303 (Iowa 1990), cert. denied, 499 U.S. 983 (1991). The Iowa Administrative
Code defined a newspaper as one that is "printed and distributed daily, weekly, or at some other
regular and usually short interval and that generally contains news, articles of opinion (editorials),
features, advertising, or other matter regarded as of current interest." See id. at 300 (citing 701
Iowa Admin. Code 18.42(1) (1981)) (emphasis added). The Iowa court held that while the
classification of the writing was a consideration, the form and frequency of the publication were
the primary factors for determining whether a publication qualified for the exemption. Id. at 303. 
Therefore, the court found no threat of censorship. Id. 

 Courts in Pennsylvania and Maryland have made similar holdings. See Magazine
Publishers of Am. v. Department of Revenue, 618 A.2d 1056, 1060 (Pa. Cmmw. Ct. 1992) (10)
(upholding the language of a newspaper exemption distinguishing newspapers from magazines 
because the newspaper exemption was based on format and frequency of publication, not upon
content) (11); Bancroft Info. Group, Inc. v. Comptroller, 603 A.2d 1289, 1294 (Md. App. 1992)
(holding that denial of exemption was not based on what was published in newsletter, but on how
many times it was circulated); see also Gallacher v. Commissioner of Revenue Serv., 602 A.2d
996, 1002 (Conn. 1992) (determining that the trial court's denial of a newspaper exemption was
not based on the content of the plaintiffs' publications but rather on the absence of most features
usually found in newspapers). (12)

 Reuters argues that the mere fact that one of the factors mentions news "of a
general character and of general interest" is sufficient to make the tax content based, even if the
format requirements would otherwise exclude Reuters from the exemption. Reuters relies on state
court decisions from Indiana, Tennessee, and Florida that conflict with Hearst. See Emmis
Publishing Corp. v. Indiana Dep't of State Revenue, 612 N.E.2d 614, 620 (Ind. Tax Ct. 1993)
(deciding that a rule defining newspaper in part as "published for the dissemination of news of
importance and of current interest to general public, general news of the day, and information of
current events" required a publication to meet content-based criteria to be considered a newspaper
for purposes of exemption); Department of Revenue v. Magazine Publishers of Am., 604 So.2d
459, 462 (Fla. 1992) (holding that a tax was content based because the fifth requirement of the
newspaper exemption required the evaluation of the publication's contents to determine whether
it contained "reports of current events and matters of general interest which appeal to a wide
spectrum of the general public"); Newsweek v. Celauro, 789 S.W.2d 247, 249 (Tenn. 1990)
(concluding that the newspaper exemption was not content neutral because publication must,
among other things, "contain matters of general interest and reports of current events"), cert.
denied, 499 U.S. 983 (1991). 

 With respect to electronic data retrieval services, content cannot be a factor in the
Comptroller's decision to deny the newspaper exemption; the exemption is automatically denied
on the basis of format distinctions. Moreover, the state court cases upon which Reuters relies
present a much closer case than is presented here. The cases cited by Reuters address the much
finer distinction that exists between newspapers and other print media. The exemption here makes
a more recognizable format distinction between electronic data retrieval services and the print
media. 

 Under Article I, § 8 and the First Amendment, we reject Reuters' facial challenge
to the newspaper exemption as it relates to electronic data retrieval services. We overrule points
of error one through four.



B. Equal Protection

 In points of error five through eight, Reuters contends that the tax provisions
violate the equal protection clauses of both the federal and state constitutions. U.S. Const. amend.
XIV; Tex. Const. art. I, § 3. Reuters argues that there is no meaningful distinction between
Reuters' product and a newspaper. 

 Under the Fourteenth Amendment, because Reuters' freedom of speech is not
infringed, the equal protection challenge is reviewed under the rational basis test. (13) See Regan,
461 U.S. at 548 (declining to apply strict scrutiny review under equal protection analysis to tax
classification after concluding that First Amendment rights were not violated); Hearst, 461
N.W.2d at 305. Reuters argues, however, that Article I, § 3 of the Texas Constitution requires
strict scrutiny review in this context because the language in Article I, § 3 is broader than the
Fourteenth Amendment. Article I, § 3 provides: "All free men, when they form a social
compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public
emoluments, or privileges, but in consideration of public services." (14) Thus, Reuters contends,
even if strict scrutiny is inappropriate under the First Amendment, it is appropriate under Article
I, § 3. 

 Under Article I, § 3, the level of review under equal protection depends on whether
a fundamental right, such as freedom of speech, has been infringed. See Spring Branch, 695
S.W.2d at 559. We have already concluded that Article I, § 8 has not been infringed because the
generally applicable sales tax does not pose the threat of suppressing particular ideas or
viewpoints; therefore, we do not apply strict scrutiny review under equal protection analysis. 

 We do recognize, however, that the rational basis test under Article I, § 3 may be
a more stringent test than under the federal rational basis test. See Whitworth v. Bynum, 699
S.W.2d 194, 195-97 (Tex. 1985) (holding the Texas Automobile Guest Statute unconstitutional
under Article I, § 3 though statute earlier upheld by Silver v. Silver, 280 U.S. 117 (1929)); Texas
Workers' Compensation Comm'n v. Garcia, 862 S.W.2d 61, 75 n.5 (Tex. App.--San Antonio
1993, writ granted); but see Rose v. Doctors Hosp., 801 S.W.2d 841, 846 (Tex. 1990) ("Texas
cases echo federal standards when determining whether a statute violates equal protection under
either provision." (citing Spring Branch, 695 S.W.2d at 559-60)). We nevertheless conclude that
the newspaper exemption withstands the rational basis test under Article I, § 3. 

 In reviewing a tax classification when fundamental rights are not affected, the tax
classification must be rationally related to a legitimate state interest. H.L. Farm Corp. v. Self,
877 S.W.2d 288, 290 (Tex. 1994); see Hurt v. Cooper, 110 S.W.2d 896, 901 (Tex. 1937)
("[C]ourts can interfere only when it is made clearly to appear that there is no reasonable basis
for the tax classification."). In this case, the State offers two state interests for the distinction
between electronic news services like Reuters and newspapers: (1) the State has an interest in
encouraging the reading of newspapers and thereby enhancing the general knowledge and literacy
of Texans; and (2) it is administratively difficult and impractical to collect a sales tax on
newspapers because the Comptroller would have to perform tax audits on hundreds of carriers
who sell newspapers on a daily or weekly basis. Administrative convenience may be a justifiable
basis for a difference in treatment between different taxpayers. Spencer Gifts, Inc. v. Bullock,
766 S.W.2d 593, 599 (Tex. App.--Austin 1989, no writ) (citing Carmichael v. Southern Coal &
Coke Co., 301 U.S. 495, 513 (1936)); see Hearst, 461 N.W.2d at 306. Similarly, promoting
literacy for its citizens is a legitimate state interest. See id. 

 The classification that distinguishes Reuters as an electronic news service from
newspapers is rationally related to these legitimate state interests. With respect to fostering
literacy, the tax scheme exempts an inexpensive form of print publication that is readily accessible
to many members of the public. In contrast, Reuters' electronic services provide their news
information in a more expensive and sophisticated manner, requiring the use of computer
monitors. See Medlock v. Leathers, 842 S.W.2d 428, 431-32 (Ark. 1992), cert. denied, 61
U.S.L.W. 3818 (June 7, 1993) (deciding that a distinguishable classification existed between cable
television and satellite services because cable required a more sophisticated transmission system
and substantial investment than satellite transmission). Moreover, it is administratively difficult
and not economical to collect the tax on newspapers due to the nature of their distribution. In
contrast, the joint stipulation of facts states that Reuters' services are provided under written
contracts with an average length of one to two years. Thus, we conclude that the distinguishing
classification between newspapers and electronic news services like Reuters are based on real and
substantial differences that are rationally related to legitimate state interests. 

 We hold that the tax scheme as applied to Reuters does not violate the equal
protection clauses of Article I, § 3 of the Texas Constitution or the Fourteenth Amendment of the
United States Constitution. We overrule points of error five through eight.



CONCLUSION


 We conclude that the Tax Code was constitutionally applied to Reuters. The State
did not violate Article I, § 8 or the First Amendment by taxing Reuters as an information service
while exempting newspapers. As applied, the tax provisions did not pose the threat of suppressing
particular ideas or viewpoints and are not subject to strict scrutiny review: (1) the tax was not
based upon the content of Reuters's speech, but upon format requirements; (2) the tax did not
single out the press alone, but was a generally applicable sales tax; and (3) the tax did not single
out a small group of the press. With respect to Reuters' facial challenge to the newspaper
exemption--limited to electronic data retrieval services--we conclude that the newspaper exemption
is not based on the content of taxpayer's speech but on format requirements. Similarly, taxing
information services while exempting newspapers does not violate the federal or state equal
protection clauses. The newspaper exemption is rationally related to promoting literacy and
administrative economy. 

 We affirm the trial-court judgment. 



 

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed

Filed: December 7, 1994

Publish 
1.   The parties' joint stipulation of facts provides that two services, Chartist and
Marketview, do not include general and specialized news. In its reply brief, Reuters concedes
that Chartist is not a news publication, but rather a computer software program, and is subject
to the sales tax.
2.   The audit covered the period between January 1, 1986 and April 30, 1989.
3.   In 1991, the Legislature amended section 151.0038 to provide:


 (a) "Information service" means:

 (1) furnishing general or specialized news or
other current information, including financial
information, unless furnished to a newspaper or
to a radio or television station licensed by the
Federal Communications Commission; or

 (2) electronic data retrieval or research.

 (b) In this section, "newspaper" has the meaning assigned by
Section 151.319(f).


Act of June 16, 1991, 72d Leg., R.S., ch. 705, § 10, 1991 Tex. Gen. Laws 2520, 2521 (Tax
Code § 151.0038).
4.   The remainder of section (f) provided: 


"Newspaper" does not include a magazine, handbill, circular, flyer,
sales catalog, or similar printed item unless the printed item is printed
for distribution as a part of a newspaper and is actually distributed as a
part of a newspaper. For the purposes of this section, an advertisement
is news of a general character and of a general interest. Notwithstanding
any of the other provisions of this subsection, "newspaper" includes (1)
a publication containing articles and essays of general interest by various
writers and advertisements that is produced for the operator of a licensed
and certified carrier of persons and distributed by the operator to its
customers during their travel on the carrier, and (2) a publication for the
dissemination of news of a general character and of a general interest
that is printed on newsprint and distributed to the general public free of
charge at a daily, weekly, or other short interval.
5.   In 1991, the Legislature amended the last sentence of section 151.319(f) to provide:


 Notwithstanding any other provision of this subsection,
"newspaper" includes:


 (1) a publication containing articles and essays of general
interest by various writers and advertisements that is
produced for the operator of a licensed and certified
carrier of persons and distributed by the operator to its
customers during their travel on the carrier; and


 (2) a publication for the dissemination of news of a general
character and of a general interest that is printed on
newsprint and distributed to the general public free of
charge at a daily, weekly, or other short interval.


Act of June 16, 1991, 72d Leg., R.S., ch. 705, § 16, 1991 Tex. Gen. Laws 2520, 2523 (Tax
Code § 151.319(f)).
6.   Reuters relies on New York and Oklahoma court decisions for the proposition that "no
useful purpose is served by treating press carrying the same speech in different formats
differently for tax purposes, and that such disparate treatment violates the First Amendment as
it places unjustified burdens on the press." See McGraw-Hill v. State Tax Comm'n, 541
N.Y.S.2d 252 (App. Div. 1989), aff'd, 552 N.Y.S.2d 915 (Ct. App. 1990); Oklahoma
Broadcasters Ass'n v. Oklahoma Tax Comm'n, 789 P.2d 1312 (Okla. 1990). Both courts
applied strict scrutiny review solely because differential treatment between the print and
broadcast media existed. McGraw-Hill, 541 N.Y.S.2d at 255; Oklahoma Broadcasters, 789
P.2d at 1316. We believe, however, that the subsequent holding by the Supreme Court in
Leathers controls the decision. 
7.   Reuters cites to the record an affidavit in which Reuters' senior sales executive names,
as Reuters' competitors in Texas, six information services with a general news interest.
8.   The United States Supreme Court defined a prior restraint as a term used "to describe
administrative and judicial orders forbidding certain communications when issued in advance
of the time that such communications are to occur." Alexander v. United States, 125 L.Ed.2d
441, 450 (1993) (citing M. Nimmer, Nimmer on Freedom of Speech § 4.03, at 4-14 (1984)).
9.   Both motions for partial summary judgment relied on the Joint Stipulation of Facts. Fact
number twenty-one states: 


Under its services, Reuters America subscribers retrieve and read the
latest news information available on a subject covered by Reuters. 
According to a Reuters' brochure "Let Reuters Put It All Together For
You" (Exhibit "A"), a Reuters monitor provides "Information retrieval
at its best . . . at a price you can afford." This same brochure states
beside a picture of a Reuters printer, "The Reuter monitor has the
facility to print out retrieved information." The brochure goes on to
say, "The Reuter Monitor is a sophisticated but simple-to-use
information retrieval system designed to provide a variety of data on a
single terminal." Reuters, however, does not carry historical data on
any of its monitor or satellite services. Reuters' subscribers can only
retrieve current news and quotes.


Words shall be read in context and construed according to the rules of grammar and common
usage. Tex. Gov't Code Ann. § 311.011(a) (West 1988). Section 151.0038(2) defines
information service as "electronic data retrieval or research." The stipulated fact above
demonstrates that subscribers retrieve the news information Reuters provides. Moreover, this
information is retrieved electronically. Because datum denotes "detailed information of any
kind", see Webster's Third New International Dictionary 577 (Philip B. Gove ed., 1961),
section 151.0038(2) must cover current news or information as well as historical data.

10.  We note that the court in Magazine Publishers also rejected the argument that the tax
violated their own Pennsylvania Constitution, Article I, § 7, which petitioners argued provided
broader protection than their rights under the First Amendment. See 618 A.2d at 1061.
11.  The newspaper exemption in the Pennsylvania Tax Code provided: "For purposes of
this section, the term `newspaper' shall mean a `legal newspaper' or a publication containing
matters of general interest and reports of current events which qualifies as a `newspaper of
general circulation' qualified to carry a `legal advertisement' as those terms are defined in 45
Pa. C.S. § 101 (relating to definitions). . . ." See Magazine Publishers, 618 A.2d at 1058
n.2. 
12.  In Gallacher, "newspaper" was not defined by statute or rule.
13.  Reuters relies on Oklahoma Broadcasters, in which the Oklahoma Supreme Court held
that a sales tax which applied to radio and television sales of licensing agreements, advertising
and broadcasting equipment, but exempted newspapers' sales of the same items, violated the
First Amendment and the Equal Protection Clause. The court in Oklahoma Broadcasters
extended the application of strict scrutiny review in Minneapolis Star and Arkansas Writers'
Project--in which there was differential treatment between members of the print media--to
differential treatment between the print and broadcast media. See Oklahoma Broadcasters,
789 P.2d at 1316. We already concluded that Oklahoma Broadcasters is controlled by the
holding in Leathers that differential treatment among members of the press does not by itself
require strict scrutiny review. Because we have concluded strict scrutiny has not been
triggered under free speech concerns, we do not apply strict scrutiny review under equal
protection grounds. 
14.  The federal equal protection clause provides that no State shall "make or enforce any law
which shall . . . deny any person within its jurisdiction the equal protection of the laws." U.S.
Const. amend. XIV.