**NU–WAY OIL COMPANY et al., Appellants,**

v.

**Bob BULLOCK, Comptroller of Public Accounts, et al., Appellees.**

**No. 12440.**

Court of Civil Appeals of Texas, Austin.

Dec. 22, 1976.

Johnnie B. Rogers, Rogers, Hughes & Herman, Austin, for appellants.

John L. Hill, Atty. Gen., Martha E. Smiley, Asst. Atty. Gen., Austin, for appellees.

O'QUINN, Justice.

By separate lawsuits filed in April and May of 1975 the three appellants sought to recover motor fuel taxes paid under protest in purported compliance with Article 1.05,

Title 122A, Taxation-General, Vernon's Anno.Civ.Sts.[1]

The trial court consolidated the suits, and the cause was tried before the court without a jury in June of 1975. Subsequently, in December of 1975, the trial court entered judgment that appellants take nothing by their suit. The court reached the merits on the claims by McCormick and Sons Oil Company and Summers Oil Company, but as to Nu-Way Oil Company the court sustained the State's plea to the jurisdiction that Nu-Way failed to file its written protest in conformity with the statute.

We will overrule all points of error and will in all things affirm judgment of the trial court.

Each of the appellants purchased motor fuel from refinery suppliers under certificates of authority the Comptroller issued under provisions of Article 9.05 (Title 122A, Taxation-General) to distributors and other entities permitted by the statute to sell, resell, or distribute "motor fuel, without collecting the tax levied." The certificates authorized each distributor to purchase stated quantities of motor fuel tax free within the limitations set out in the certificates. It is uncontroverted that some of the gasoline purchased tax free by each appellant was sold in violation of the specific certificates.

The Comptroller conducted audits on each appellant company and thereafter assessed deficiencies based upon the difference between the gross gallons *delivered* into the storage tanks of retail dealers and the gallons *metered out* from the retail pumps, with allowance, however, for evaporation as required (one and one-half percent) by Article 9.02 of the motor fuel tax law.

Appellants contend that only the amount *metered out* of the retail pumps should be taxed. Appellants concede that meter readings often are inaccurate, or the meters are intermittently inoperative. Appellants admit selling motor fuel in violation of their respective certificates of authority, which renders such sales taxable under Article 9.05(2), but appellants insist they do not know how much motor fuel was sold improperly. Finally, appellants contend that the Comptroller has the burden to prove the amount of such sales subject to the tax.

The trial court filed findings of fact and conclusions of law. The trial court found that appellants disposed of fuel in a manner not authorized "within the limitations set out in the Certificates of Authority," and that "some of the motor fuel purchased tax-free . . . was disposed of by them [appellants], upon which no tax was paid, was unaccounted for by . . . [appellants] at the end of the calendar months which were included in the audits."

The court also concluded that the Comptroller's Ruling No. 70–0.11, under which the Comptroller conducted the audits, "is not inconsistent with Chapter 9, Title 122A," and "is not in violation of Article I, Section 19 of the Constitution of the State of Texas." The court further concluded that "Ruling No. 70–0.11 does not exceed the rule-making power vested by Article 9.23, Chapter 9, Title 122A," in the Comptroller.

The trial court's findings of fact are supported by the record, and we approve the court's conclusions of law as proper for affirmance.

Appellants bring eleven points of error, under which four principal issues are raised on appeal.

Appellants urge, under points six, seven, and eight, that the trial court erred in finding that some of the motor fuel was "unaccounted for," and in support of their position appellants argue that the fuel either *evaporated* or *leaked out* and therefore was not *unaccounted for* in the usual sense. It is undisputed that the Comptroller made statutory allowance for fuel that might have evaporated.

1. Appellants are McCormick and Sons Oil Company, Inc., Summers Oil Company, and Nu-Way Oil Company; defendants in conformance with statutory requirements, are the Comptroller of Public Accounts, the Attorney General and the Treasurer of the State of Texas, in this opinion designated the State or the Comptroller.

It is settled that, insofar as other fuel not accounted for is concerned, the burden rests on the taxpayer, not on the Comptroller, to establish what became of the fuel unaccounted for. Article 9.05(2) of the motor fuel tax law directs that "Any motor fuel purchased tax-free which is unaccounted for . . . shall be *prima facie* presumed to have been sold or used for taxable purposes." (Emphasis supplied). This Court held in *Smith v. State*, 418 S.W.2d 893, 896 (Tex.Civ.App. Austin 1967, no writ), that with the *prima facie* presumption established by the State's assessment, the burden shifts to the taxpayer to overcome the presumption with such evidence, tending to support the contrary, as would be conclusive, or would be so clear and positive as to render it unreasonable not to give effect to the evidence as conclusive. Other decisions placing the burden of proof on the taxpayer include *Big Country Club, Inc. v. Humphreys*, 511 S.W.2d 315, 317 (Tex.Civ.App. Beaumont 1974, writ ref. n. r. e.); *Baker v. Bullock*, 529 S.W.2d 279, 281 (Tex.Civ.App. Austin 1975, writ ref. n. r. e.); *Calvert v. Union Producing Company*, 154 Tex. 479, 280 S.W.2d 241, 243 (1955).

Under their ninth point of error appellants urge that for any tax due on unauthorized sales by the holder of a certificate of authority the Comptroller should make collection from persons other than the certificate holder. It is undisputed that appellants made *retail sales* of unknown quantities of fuel in obvious violation of their certificates. The motor fuel tax statute requires that the holder of a certificate of authority ". . . shall collect and pay over . . . a tax . . . upon the first sale or distribution of said motor fuel made thereafter *for any purpose other than a tax-free sale* authorized by the Comptroller, and shall pay said tax . . . upon each gallon of motor fuel *used or unaccounted for* by said distributor . . ." Art. 9.05(2). As already noted, the statute continues with the further requirement that "Any motor fuel purchased tax-free which is unaccounted for at the end of each calendar month shall be *prima facie pre-*sumed to have been sold or used for *taxable purposes.*" (All emphasis supplied).

The statute plainly places the tax burden on the holder of the certificate who makes sales of fuel not authorized, as well as upon fuel not accounted for. The Comptroller may rely on a *prima facie* presumption that all sales are taxable, and the distributor must produce evidence to overcome the presumption. No such evidence was introduced by appellants, who conceded by their testimony that they did not know how much fuel was sold in violation of the certificates. The point of error is overruled.

Appellants' attack on the Comptroller's audit and assessment, pursuant to authority of Rule "711" (Ruling No. 70–0.11) falls under points of error one through five. Appellants insist that the Rule exceeds the Comptroller's rule-making power granted by Article 9.23 and that it is inconsistent with Chapter 9, Title 122A.

The main argument appears to be that the Comptroller's ruling improperly seeks to change from a "first sale" to a "delivery tax" the mode of collecting the motor fuel tax. In support of this view appellants point to amendment in 1971 of the article prescribing the rate of tax and providing allowance for handling and evaporation of motor fuels. Art. 9.02(2); Acts 1971, 62nd Leg., p. 2031, ch. 626, sec. 3, effective August 30, 1971.

Appellants contend that by the amendment the Legislature adopted the "delivery" method of computing the "first sale" tax, as *previously* provided in Ruling 70–0.-11, and that taxes sought to be assessed by the Comptroller prior to the effective date of the amendment may not be collected under authority of the Rule. "It seems obvious," appellants argue, "that if the Comptroller had the lawful authority to promulgate Ruling 70–0.11, there was no need for the legislature to amend the law in 1971."

Appellants' contentions are not sustainable for several reasons. *First*, the Comptroller used Rule "711" as an *auditing procedure* to measure the quantity of gasoline

*sold* by looking at the quantity *delivered,* less the statutory allowance for evaporation. Appellants would have the Comptroller audit solely upon the basis of meter readings which appellants admitted at trial were inaccurate and the meters not consistently operative. *Second,* it is undisputed that appellants made *retail sales* of some of the fuel in violation of the certificates of authority. Appellants did not keep records of these sales. Under Article 9.05(2) ". . . any motor fuel purchased tax-free which is unaccounted for . . . shall be prima facie presumed to have been sold or used for *taxable* purposes." (Emphasis added).

■ *Third,* the legislative amendment in 1971 did not change the definition of "first sale." The amendment to Article 9.02 merely increased the percentage allowance for evaporation and provided minor changes not germane to this issue. The amendment made no change in the definition of "first sale" and added language stating:

". . . and it is expressly provided that the tax shall be computed and paid or collected and paid over to the State on the gross or volumetric gallons of taxable motor fuel sold or distributed to such wholesalers or jobbers, dealers or bulk users, as shown by the Comptroller's measurement certificate issued for the vehicle tank making such deliveries, *or as shown by any other measuring device approved by the Comptroller.*" (Emphasis supplied). (Article 9.02(2) as amended 1971).

The amendatory statute recognizes the necessity for flexible *auditing* procedures by the Comptroller. The amendment indeed does not change the law to a "delivery" tax. The Comptroller's authority to promulgate rules to enforce the tax laws derives from the express provisions of Article 9.19, enacted in 1959, and rule-making power and procedures for promulgation are further expressed in Article 9.23, enacted in 1959 and amended in 1967.

The trial court found that appellants disposed of fuel in a manner not authorized under the certificates of authority and concluded that the Comptroller's Ruling 70–0.-11 is not inconsistent with Chapter 9, Title

122A, nor with Article I, section 19, of the Constitution of Texas; and, further, that the Rule is not beyond the rule-making power vested in the Comptroller by Article 9.23. The trial court's findings of facts are supported by the record, and the court's conclusions of law we find correct and approve them.

■ Finally, under points ten and eleven, appellants claim error in the trial court's finding that it was without jurisdiction to hear and dispose of suit by Nu-Way Oil Company for tax refund, for the reason that Nu-Way had failed to file its written protest in conformity with Article 1.05, Title 122A, Taxation-General. The record shows that Nu-Way paid the tax by check which bore a notation of "paid under protest." Eighty-six days later Nu-Way sent a written protest, and suit was thereafter filed within the ninety days allowed by statute.

Article 1.05 authorizes payment under protest of certain taxes, including motor fuel taxes, by any taxpayer ". . . who believes or contends that the same is unlawful and that such public official is not lawfully entitled to demand or collect the same . . . " and further provides that the taxpayer ". . . shall be entitled to *accompany such payment with a written protest, setting out fully and in detail each and every ground or reason why it is contended that such demand is unlawful or unauthorized.*" (Emphasis added). Article 1.05(1). The statute also provides, "Upon the payment of such taxes . . . *accompanied by such written protest,* the taxpayer shall have ninety (90) days from said date within which to file suit . . . " and limits the issues on trial only to the issues ". . . arising out of the grounds or reasons *set forth in such written protest* as originally filed." (Emphasis added). Article 1.05(2).

In construing Article 7057b, sec. 1, V.A. C.S., the antecedent statute of Article 1.05, this Court in 1946 stated the purposes of the protest statute. In *James v. Consolidated Steel Corp.,* 195 S.W.2d 955, 962 (Tex. Civ.App. Austin 1946, writ ref. n.r.e.), it was said:

"The purpose of such protest statute was twofold: 1. To require the taxpayer to inform the collecting agency the grounds or reasons for such protest with sufficient clarity and detail for the agency to determine from its own records and the information furnished the merits and validity of the protest; and 2. To prevent the taxpayer, after he files suit, from changing to or asserting upon the trial other or different grounds from those stated in his protest. In other words, to prevent him after making his protest from subsequently taking advantage of the collecting agency upon such trial by 'changing horses', so to speak, and having adjudicated grounds or reasons which the agency had not theretofore been called upon or had opportunity to determine. The reasons for such a requirement are obvious. The provisions of Sec. 2 of Art. 7057b confining the trial to 'The issues * * * arising out of the grounds or reasons set forth in such written protest as originally filed' is one of limitation, and does not enlarge the provisions of Sec. 1, relating to the grounds or reasons for such protest."

It is plain that the essential purpose of a written protest, timely filed and accompanying payment, is to give the agency, in this case the Comptroller, opportunity to review the reasons given for the protest and, if protest is rejected, to defend suit by the taxpayer upon the issues raised in the written protest. Payment of the taxes, "accompanied by such written protest," is requisite on the part of the taxpayer to provide basis for later suit. To *accompany* payment, the written protest must "go along with, or to accompany each other, and should, as nearly as possible, be simultaneous." *Securities Credit Corp. v. Pindell*, 153 Neb. 298, 44 N.W.2d 501, 507 (1950). *Black's Law Dictionary*, Rev. 4th ed. (1968) defines "accompany" as "to go along with . . . To go with or attend as a companion or associate, to occur in association with." Citing *U. S. v. Lee*, 7 Cir., 131 F.2d 464, 466 (1942).

Postponement of filing the written protest for eighty-six days after payment of the tax does not comport with protest in writing *accompanying* payment, as required by statute. We sustain the action of the trial court and overrule the points of error attacking this action.

Judgment of the trial court is in all things affirmed.

Affirmed.