In the Matter of McGraw-Hill, Inc., Petitioner, v State Tax Commission, Respondent.

Third Department, May 11, 1989

### APPEARANCES OF COUNSEL

*John L. Cady* for petitioner.

*Robert Abrams, Attorney-General (Francis V. Dow* and *Wayne L. Benjamin* of counsel), for respondent.

### OPINION OF THE COURT

KANE, J.

Petitioner is a New York corporation engaged in the business of publishing magazines for distribution nationwide. As part of this activity, it generates revenue from the sale of advertisements in its magazines. All contractual arrangements for such advertising space are handled through petitioner's New York sales office and, in the calendar years 1976, 1977, 1978 and 1979, petitioner's net receipts for sales of advertising totaled $733,416,693. By virtue of its New York situs, petitioner is required to pay franchise tax annually based upon the percentage of its net income attributable to its activities in this State *(see,* Tax Law §§ 209, 210). During tax years 1976 through 1979 (hereinafter referred to as the audit period), in determining that portion of its net income attributable to its activities in New York for franchise tax purposes, petitioner treated the advertising income as income derived from "services performed within the state" (Tax Law § 210 [3] [a] [2] [former (B)], as amended by L 1968, ch 557), concluding that advertising constituted a service which was performed when and at the location where the advertised product was read by a potential purchaser. Accordingly, it included in its New York receipts only that percentage of the total net advertising income that the New York circulation for a particular magazine bore to its total circulation (this method is known as the destination formula) *(see,* 20 NYCRR 4-4.3 [former (d)], renum 20 NYCRR 4-4.3 [f] [1]).

In early 1984, petitioner was the subject of a field audit

conducted by the Audit Division of the Department of Taxation and Finance. The Audit Division concluded that, for the audit period, petitioner erred in treating the $733,416,693 advertising income as sales of services and in applying the destination formula. According to the Audit Division, since those receipts were attributable to contracts that were solicited, negotiated and handled through petitioner's New York sales offices, they constituted "business receipts earned within the state" (Tax Law § 210 [3] [a] [2] [D]), and the entire amount of the net receipts was to be included in calculating the franchise tax for those years, applying what is known as the origin formula. This interpretation of the Tax Law had been previously approved by this court in *Matter of Condé Nast Publs. v State Tax Commn.* (51 AD2d 17, *mot to dismiss appeal granted* 39 NY2d 942). Accordingly, the Audit Division issued audit adjustments and notices of deficiency for each of the years in the audit period. The amount of tax due, including interest, totaled $1,085,371.

Shortly thereafter, petitioner sought a redetermination before respondent of the deficiencies and a hearing was subsequently held in 1986. At the hearing, petitioner contended that *Matter of Condé Nast Publs. v State Tax Commn. (supra)* was no longer controlling because in 1978, and after Condé Nast was decided, respondent enacted 20 NYCRR 4-4.3 (former [d] [2]) which provided, in pertinent part that: "The broadcasting of * * * commercial messages by way of radio and television * * * is deemed to be a service. When a lump sum is received for such service, that lump sum shall be allocated to New York State and another state or states according to the number of listeners or viewers in each state."[1] Although this amendment only applied to receipts from radio and television advertising,[2] petitioner introduced into evidence a number of magazine advertisements and a videotape of the corresponding advertisement that appeared on radio and/or television at the time to establish similarity of content. In view of this similarity, petitioner contended that

---

1. Effective September 1979, this provision was renumbered as 20 NYCRR 4-4.3 (f) (2) and will hereinafter be referred to by its current citation.

2. Effective January 1, 1982, the Legislature amended Tax Law § 210 (3) (a) (2) (B) to make clear that the destination formula applied to advertising receipts arising from sales of advertising contained in newspapers and periodicals (L 1981, ch 103, § 1). However, there was no indication that this amendment was to apply retroactively. Nonetheless, petitioner asserted that this amendment was applicable to the audit period.

it was no longer rational or reasonable to apply the origin formula to receipts from magazine advertising that was upheld in *Condé Nast* now that the destination formula was being applied to the radio and television industries, and that such an interpretation would violate, *inter alia,* the 1st and 14th Amendments of the US Constitution.

■ Subsequently, respondent issued its determination in the matter. It concluded that since 20 NYCRR 4-4.3 (f) (2), by its terms, applied only to receipts from radio and television advertising, it did not affect the prior practice, upheld by this court in *Condé Nast (supra),* of treating receipts from magazine advertisements under the origin formula. Additionally, respondent noted that the 1981 amendment (L 1981, ch 103, § 1) to Tax Law § 210 (3) (a) (2) (B) was not intended to be given retroactive effect. Since it was uncontroverted that the advertising contracts in question originated in New York, respondent sustained the Audit Division's notices of deficiency and presumed the constitutionality of this interpretation. Following the posting of a bond in the amount of the calculated deficiency, petitioner commenced this CPLR article 78 proceeding, contending that respondent's determination was not supported by substantial evidence and was affected by errors of law. The proceeding was transferred to this court pursuant to CPLR 7804 (g).[3]

■ In our view, resolution of one of the constitutional issues raised is dispositive of the instant matter. The 1st Amendment of the United States Constitution provides that "Congress shall make no law * * * abridging the freedom of * * * the press" and under the Due Process Clause of the 14th Amendment, this restriction applies to the States as well *(Grosjean v American Press Co.,* 297 US 233, 243-244). As previously noted, the regulation at issue, 20 NYCRR 4-4.3 (f) (2), permitted the "broadcasting of * * * commercial messages by way of radio or television" to be classified as a service. However, such a classification during the audit period was not permitted for petitioner, whose advertising receipts arose from sales of advertising contained in its publications. We are

---

**3.** ■ We note that insofar as this proceeding concerns only questions of law it did not involve an issue of substantial evidence under CPLR 7803 (4) and was therefore improperly transferred to this court *(see, Matter of Save the Pine Bush v Planning Bd.,* 83 AD2d 741). However, in the interest of judicial economy on this occasion, we are addressing the merits of the case *(see, Matter of Hudson Riv. Fisherman's Assn. v Williams,* 139 AD2d 234, 238).

persuaded that in this case, petitioner is correct in its contention that the difference in treatment between the print and broadcast media under 20 NYCRR 4-4.3 (f) (2) violates the 1st Amendment guarantee of freedom of the press. A tax that singles out the press for differential treatment is "presumptively unconstitutional" under the 1st Amendment and is not permitted unless a State can show "a counterbalancing interest of compelling importance that it cannot achieve without differential taxation" *(Minneapolis Star v Minnesota Commr. of Revenue,* 460 US 575, 585). Here, respondent argues that no 1st Amendment rights are implicated because 20 NYCRR 4-4.3 (f) (2) does not differentiate between written publications and other businesses, but only between the written media and the broadcast media. However, a taxing scheme which taxes some members of the press but exempts others of the press does not escape 1st Amendment scrutiny even if businesses outside of the press are also not exempt *(Arkansas Writers' Project v Ragland,* 481 US 221, 230-231). As the United States Supreme Court has specifically noted, "the fundamental question is not whether the tax singles out the press as a whole, but whether it targets a small group within the press" *(supra,* at 229).

Given that there was differential treatment between the print media and the broadcast media in this case, it was incumbent upon respondent to show that 20 NYCRR 4-4.3 (f) (2) was necessary to serve a compelling State interest *(see, Arkansas Writers' Project v Ragland, supra).* This, in our view, it did not do. Respondent claims that the unique nature of the electronic media makes it more susceptible to governmental regulation and that there are many differences between the print and visual media. While that may be true, such an argument fails to show any compelling State interest in taxing the two types of media differently. Thus, the regulation must fall. Additionally, respondent's argument that the taxing scheme may actually at times work in the taxed party's favor was specifically rejected by the Supreme Court in *Minneapolis Star v Minnesota Commr. of Revenue (supra,* at 588). To conclude, we find that the regulation at issue is unconstitutional under the 1st Amendment and grant the petition. Having reached the conclusion that the regulation at issue cannot stand, it is unnecessary to address petitioner's remaining arguments.

MIKOLL, J. (dissenting). I respectfully dissent.

In *Matter of Condé Nast Publs. v State Tax Commn.* (51 AD2d 17, *mot to dismiss appeal granted* 39 NY2d 942), this court decided the precise issue before us, i.e., that under the provisions of Tax Law § 210 (3) (a) (2) (former [D]) petitioner's receipts from magazine advertising contracts which were negotiated and handled in New York are totally New York receipts because they constitute business receipts earned within the State. Petitioner's contention that *Condé Nast* is no longer applicable should be rejected. That contention is based on respondent's promulgation in 1978 of 20 NYCRR 4-4.3 (former [d]) (2) (renum 20 NYCRR 4-4.3 [f] [2]) classifying receipts from sales of advertising by radio and television broadcasters as receipts from "services" and thus taxable at the ultimate destination rather than at the source. The ruling is retroactive to all open years and includes the years of the instant audit. Essentially, petitioner contends that there is no distinction between print and broadcast advertising and thus there is no rational basis to continue to follow the *Condé Nast* formula for receipts from print advertising and 20 NYCRR 4-4.3 (f) (2) for receipts from radio and television advertising. Petitioner also argues that this disparate treatment violates its Federal constitutional guarantee of equal protection and impinges upon its 1st Amendment rights to free speech and freedom of the press. Finally, petitioner asserts that the Legislature, by its amendment in 1981 (L 1981, ch 103, § 1) of Tax Law § 210 (3) (a) (2) (B) has indicated its intent to include advertising as a "service" and thus make it taxable where rendered. As this last argument is being interposed for the first time on appeal, it is not properly before us *(see, Matter of Carrazza Buick [C. Richard Ferris, Inc.—Catherwood],* 20 AD2d 613, 614).

It is settled law that the construction given statutes and regulations by an agency responsible for their administration, if not irrational or unreasonable, should be upheld *(e.g., Matter of Condé Nast Publs. v State Tax Commn., supra).* Petitioner bears the burden of proof that the interpretation is arbitrary and unreasonable.

Dealing differently with receipts from radio and television advertising as opposed to print media does not constitute unequal treatment of petitioner under the Constitution. The applicable standard of review to such a challenge is a rational basis test. Petitioner bears the burden of proving that "the difference in treatment is 'palpably arbitrary' or amounts to an 'invidious discrimination' " *(see, Trump v Chu,* 65 NY2d

20, 25). In support of its contention, petitioner urges that the content of advertisement in print media is substantially the same as those in radio and television advertising. Accepting that premise as true, there are nevertheless other differences between printed media and broadcast media *(see, Matter of New Yorker Mag. v Gerosa,* 3 NY2d 362, 369, *appeal dismissed* 356 US 339). States have considerable leeway in drawing distinctions between businesses and in assessing reasonable systems of taxation *(see, Matter of Long Is. Light. Co. v State Tax Commn.,* 45 NY2d 529). With these concepts in mind, the imposition of the tax here is not arbitrary, irrational or unreasonable. The formula utilized in allocating advertising receipts to where contracts are negotiated is the norm for all types of businesses rather than the exception in taxation statutes. There are also obvious practical distinctions between print and broadcast media which justify differences in taxation treatment. Petitioner is not being treated differently than others likewise situated nor has there been a suspect category created by the tax treatment accorded print media.

Petitioner's argument that the interpretation of Tax Law § 210 (3) (a) (2) abridges freedom of the press is also without substance. Petitioner contends that the Tax Law singles out print media from other media improperly. The formula used in allocating advertising receipts was uniformly applied to all distributors of advertising. The advent in 1978 of 20 NYCRR 4-4.3 (f) (2) and its singling out broadcast media is justified by the uniqueness of that industry *(see, Erie Communications v City of Erie,* 853 F2d 1084, 1089, n 9).

Furthermore, the tax classification has not been drawn so as to impinge on petitioner's freedom of speech. Rather, petitioner's advertisers may be affected in that print advertising may carry costs not borne by broadcast advertisers, so that if there is any effect on petitioner, it is an economic one rather than one bearing on freedom of speech. The tax classification created is not arbitrary or irrational and should be sustained. Accordingly, I would confirm respondent's determination and dismiss the petition.

MAHONEY, P. J., YESAWICH, JR., and HARVEY, JJ., concur with KANE, J.; MIKOLL, J., dissents and votes to confirm in a separate opinion.

Determination annulled, with costs, petition granted and matter remitted to respondent for further proceedings not inconsistent with this court's decision.