REUTERS AMERICA, INC., Appellant,

v.

John SHARP, Comptroller of Public Accounts of the State of Texas, Martha Whitehead, Treasurer of the State of Texas, and Dan Morales, Attorney General of the State of Texas, Appellees.

No. 3–93–124–CV.

Court of Appeals of Texas,
Austin.

Dec. 7, 1994.

Rehearing Overruled Jan. 25, 1995.

David J. Healy; Arnold, White & Durkee, Houston, for appellant.

Dan Morales, Atty. Gen., Harriett D. Burke, Asst. Atty. Gen., Austin, for appellee.

Before CARROLL, C.J., and ABOUSSIE and B.A. SMITH, JJ.

CARROLL, Chief Justice.

■ Reuters America, Inc. ("Reuters") challenges the constitutionality of the state

tax scheme that taxes information services and exempts newspapers. *See* Tex.Tax Code Ann. §§ 151.0101(a)(10), .038(a), .319(a), (f) (West 1992) ("Tax Code"); 34 Tex.Admin.Code § 3.342 (1994). The Comptroller taxed Reuters as an information service, and Reuters filed a tax protest suit and declaratory judgment in district court. *See* Tax Code § 112.051. Reuters appeals the judgment in favor of the State, arguing that the information services tax and the newspaper exemption violate the free speech and equal protection clauses of the federal and state constitutions. U.S. Const. amends. I, XIV; Tex. Const. art. I, §§ 3, 8. We will uphold the constitutionality of the tax and affirm the trial-court judgment.

## BACKGROUND

Reuters provides electronic news services to its subscribers. Each service reports news on a particular topic, such as energy, commodities, mortgages, or equity markets. General news relating to political events, sports events, weather, and human interest stories are also included within each particular service.[1] Reuters employs reporters who gather and write the news for its subscribers. Subscribers receive this news through their computer systems by satellite or telephone lines. They contract with Reuters on a yearly basis and are billed quarterly or monthly for these services. The service is available to subscribers seven days a week, twenty-four hours a day.

The Texas Comptroller of Public Accounts (the "Comptroller") audited Reuters and determined that it owed additional taxes based on its classification as an information service under the Tax Code.[2] *See* Act of July 21, 1987, 70th Leg., 2d C.S., ch. 5, art. 1, pt. 4, § 5, 1987 Tex.Gen.Laws 9, 11 (Tax Code § 151.0038, since amended). The bulk of this additional tax came from taxation on Reuters' energy services, domestic money services, and international money rate services. After an administrative hearing upholding

the tax assessment, Reuters paid $318,819.22 under protest.

Reuters then filed a tax protest suit in district court to recover the amount paid, arguing in its petition that the information services tax and the newspaper exemption violated the First Amendment and Article I, § 8 of the Texas Constitution. The parties agreed to a joint stipulation of facts, and the State and Reuters then moved for partial summary judgment on the constitutionality of the tax scheme. Reuters added in its motion that the tax scheme also violated the state and federal equal protection clauses. The district court granted the State's motion and denied Reuters' motion. Because the parties did not dispute the amount of the tax assessed, the court rendered final judgment in favor of the State.

## DISCUSSION

We must determine whether a tax scheme that taxes Reuters as an information service while exempting newspapers violates Reuters' constitutional rights under the free speech and equal protection clauses of the state and federal constitutions. Reuters argues that the Texas Constitution provides even broader protection under its free speech and equal protection provisions than the federal constitution. Moreover, Reuters argues that the tax provisions are unconstitutional on their face and as applied.

In determining the constitutionality of a statute, there is a strong presumption of its validity; moreover, tax legislation receives special deference. *Vinson v. Burgess,* 773 S.W.2d 263, 266 (Tex.1989). Reuters essentially challenges the legislature's creation of different classifications within its tax scheme. Tax classification decisions are ordinarily afforded broad discretion. *See Regan v. Taxation With Representation,* 461 U.S. 540, 547, 103 S.Ct. 1997, 2001, 76 L.Ed.2d 129 (1983). However, in determining classifications, the legislature may not

---

1. The parties' joint stipulation of facts provides that two services, Chartist and Marketview, do not include general and specialized news. In its reply brief, Reuters concedes that Chartist is not a news publication, but rather a computer software program, and is subject to the sales tax.

2. The audit covered the period between January 1, 1986 and April 30, 1989.

create categories that suppress the expression of particular ideas or viewpoints. *See Leathers v. Medlock*, 499 U.S. 439, 447, 111 S.Ct. 1438, 1443, 113 L.Ed.2d 494 (1991).

■ If the tax classification raises free speech concerns by threatening to suppress the expression of particular ideas or viewpoints, then the tax is constitutionally suspect and becomes subject to strict scrutiny, thus requiring the state to offer a compelling justification for the tax. *See id.* If the fundamental right of free speech is not infringed, then equal protection analysis requires that the classification be rationally related to a legitimate state interest. *See Spring Branch Indep. Sch. Dist. v. Stamos*, 695 S.W.2d 556, 559 (Tex.1985), *appeal dismissed*, 475 U.S. 1001, 106 S.Ct. 1170, 89 L.Ed.2d 290 (1986) ("When the classification created by a state regulatory scheme neither infringes upon fundamental rights nor burdens an inherently suspect class, equal protection analysis requires that the classification be rationally related to a legitimate state interest.").

In light of this standard, we first review the basic framework of the tax scheme. The broad-based sales tax at issue in this case attaches to each sale of a taxable item in the state, comprising both tangible personal property and taxable services. *See* Tax Code §§ 151.010, .0101, .051. The scheme taxes some members of the press while exempting others. Newspapers, magazines, and broadcasts by commercial radio or television are exempt from the tax. *Id.* §§ 151.319(a), .320(a), .323(3). However, the Tax Code classifies information services, cable television, and telecommunications as taxable services. *Id.* §§ 151.0101(a)(2), (6), (10).

At the time of the audit, the Tax Code defined "information service" as:

(1) furnishing general or specialized news or other current information, including

financial information, unless furnished to a newspaper of general circulation published at least as frequently as weekly or to a radio or television station licensed by the Federal Communications Commission; or

(2) electronic data retrieval or research.

Act of July 21, 1987, 70th Leg., 2d C.S., ch. 5, art. 1, pt. 4, § 5, 1987 Tex.Gen.Laws 9, 11 (Tax Code § 151.0038, since amended).[3] Reuters argues that it was taxed under subsection (1). Both parties agree that Reuters conceded at the administrative hearing that it fell within the definition of information services under subsection (1). The State argues, however, that while Reuters may fall under subsection (1), it also falls under subsection (2) as an electronic data retrieval service.

The Comptroller's decision attached to Reuters' original petition does not expressly state under which provision Reuters was taxed; however, the Comptroller notes that Reuters

does not challenge the constitutionality of Section 151.0038 of the Texas Tax Code which defines "information service", as it pertains here, to mean "furnishing general or specialized news or other current information, including financial information. . . ." Indeed, the Petitioner concedes that its operations come within these Statutory provisions. [On exceptions, the Petitioner stresses that it does deny the Statutes' constitutionality, but realizes that it would be fruitless to pursue that argument here, given this forum's lack of authority to rule on the issue.]

While this language suggests that Reuters was taxed under subsection (1), the issues in a protest suit are tried de novo. *See* Tax Code § 112.154. The State argued in its motion for partial summary judgment that

---

**3.** In 1991, the Legislature amended section 151.0038 to provide:

 (a) "Information service" means:

 (1) furnishing general or specialized news or other current information, including financial information, unless furnished to a newspaper or to a radio or television station licensed by the Federal Communications Commission; or

 (2) electronic data retrieval or research.

 (b) In this section, "newspaper" has the meaning assigned by Section 151.319(f).

Act of June 16, 1991, 72d Leg., R.S., ch. 705, § 10, 1991 Tex.Gen. Laws 2520, 2521 (Tax Code § 151.0038).

Reuters was taxable as an electronic data retrieval service under subsection (2). Thus, in determining Reuters' facial challenge to the statute, we may consider whether Reuters also falls under subsection (2) as an electronic data retrieval service.

Although information services are taxed, certain newspapers are exempt under the Tax Code. At the time of the audit, an exempt newspaper had to meet the following requirements:

> (f) In this section, "newspaper" means a publication that is printed on newsprint, the average sales price of which for each copy over a 30-day period does not exceed 75 cents, and that is printed and distributed at a daily, weekly, or other short interval for the dissemination of news of a general character and of a general interest....[4]

Act of May 19, 1983, 68th Leg., R.S., ch. 840, § 4, 1983 Tex.Gen.Laws 4769, 4770 (Tax Code § 151.319(f), since amended).[5] The definition distinguishes newspapers from other media by several format requirements concerning the type of paper, the distribution frequency, and price. In addition, the definition provides that a newspaper disseminate news of a "general character and of a general interest." In light of this framework, we first review the challenge to the tax scheme under the federal and state free speech provisions.

**4.** The remainder of section (f) provided:
 "Newspaper" does not include a magazine, handbill, circular, flyer, sales catalog, or similar printed item unless the printed item is printed for distribution as a part of a newspaper and is actually distributed as a part of a newspaper. For the purposes of this section, an advertisement is news of a general character and of a general interest. Notwithstanding any of the other provisions of this subsection, "newspaper" includes (1) a publication containing articles and essays of general interest by various writers and advertisements that is produced for the operator of a licensed and certified carrier of persons and distributed by the operator to its customers during their travel on the carrier, and (2) a publication for the dissemination of news of a general character and of a general interest that is printed on newsprint and distributed to the general public free of charge at a daily, weekly, or other short interval.

## A. Freedom of Speech

█ In its first four points of error, Reuters argues that the tax provisions are unconstitutional on their face and as applied to Reuters under the state and federal free speech provisions. The First Amendment, as incorporated by the Fourteenth Amendment, prohibits the states from making laws that abridge the freedom of speech or press. U.S. Const. amends. I, XIV. Article I, § 8 of the Texas Constitution provides in part:

> Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press.

Tex. Const. art. I, § 8. In some respects, Article I, § 8 is broader than the First Amendment. *Davenport v. Garcia*, 834 S.W.2d 4, 8 (Tex.1992). Regardless, Article I, § 8 provides at least the minimum safeguards afforded by the First Amendment. *See id.* at 15 ("The only limit on the states is that, in relying on their own constitutions, they may not deny individuals the minimum level of protection mandated by the Federal Constitution."). Therefore, we first analyze the tax under the minimum safeguards afforded by the First Amendment. Should the tax withstand this analysis, we will then address whether Article I, § 8 is broader than the First Amendment in the context of tax classifications.

**5.** In 1991, the Legislature amended the last sentence of section 151.319(f) to provide:

 Notwithstanding any other provision of this subsection, "newspaper" includes:
 (1) a publication containing articles and essays of general interest by various writers and advertisements that is produced for the operator of a licensed and certified carrier of persons and distributed by the operator to its customers during their travel on the carrier; and
 (2) a publication for the dissemination of news of a general character and of a general interest that is printed on newsprint and distributed to the general public free of charge at a daily, weekly, or other short interval.
 Act of June 16, 1991, 72d Leg., R.S., ch. 705, § 16, 1991 Tex.Gen. Laws 2520, 2523 (Tax Code § 151.319(f)).

### 1. As Applied: The First Amendment

■ Reuters contends the tax is unconstitutional as applied because it singles out Reuters alone among other members of the press. Reuters argues that it is an "electronic newspaper" and therefore part of the newspaper medium. Reuters notes that the joint stipulation of facts provides that Reuters' content is the same as that read by subscribers to the *Wall Street Journal* and that Reuters gathers and writes the news in the same manner as "newsprint" newspapers. Reuters argues that because its content is the same as newspapers, the treatment for tax purposes must be the same. It concludes that the tax thus penalizes select members of the newspaper medium, violating their freedom of speech.

■ We agree that a tax structure cannot penalize select members of the newspaper medium. *See Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue*, 460 U.S. 575, 591–92, 103 S.Ct. 1365, 1375, 75 L.Ed.2d 295 (1983); Grosjean v. American Press Co., 297 U.S. 233, 251, 56 S.Ct. 444, 449, 80 L.Ed. 660 (1936). However, we do not believe that Reuters is part of that medium. A medium is a channel, method, or system of communication. *Webster's Third International Dictionary* 1403 (Philip B. Gove ed., 1961). Reuters and newspapers convey their messages through different means. To receive Reuters' information, subscribers must use a computer monitor. They must enter into a one to two year contract to receive the services. The information is conveyed electronically, presented live on a computer monitor screen, and constantly updated, rather than presented daily in a newspaper.

The newspaper exemption recognizes the format distinctions with respect to price, newsprint, and frequency of distribution. These format requirements discriminate on the basis of medium, that is, on the basis of how the message is conveyed, rather than on the content of the message. Reuters argues that these format distinctions are meaningless and that the State cannot permissibly distinguish a newspaper from other media in this way. We disagree.

The United States Supreme Court held that extending a generally applicable sales tax to cable television services alone or to cable and satellite services, while exempting the print media, did not violate the First Amendment. *Leathers*, 499 U.S. at 453, 111 S.Ct. at 1447. In making this determination, the Court noted that the record contained no evidence, nor was it contended, that cable television offered material that differed systematically from that communicated by satellite broadcast programming, newspapers, or magazines. *Id.* at 449, 111 S.Ct. at 1444. We believe Reuters' service is similar to the cable industry, which presents information through a medium different than the print media. That Reuters is taxed differently from other media does not by itself raise First Amendment concerns.[6] *See id.* at 444, 111 S.Ct. at 1442.

■ However, a sales tax that targets selected segments of the media becomes constitutionally suspect when it threatens to suppress the expression of particular ideas or viewpoints. A tax requires strict-scrutiny review when the tax: (1) is limited to the press alone; (2) targets a small group of speakers; or (3) discriminates on the basis of the content of the taxpayer's speech. *Id.* at 447, 111 S.Ct. at 1443. Reuters argues that even if it is not part of the newspaper medium, the tax targets a small group of speakers and, therefore, triggers strict scrutiny.

Reuters argues that the record reveals that the Texas statute taxes only a few elec-

---

**6.** Reuters relies on New York and Oklahoma court decisions for the proposition that "no useful purpose is served by treating press carrying the same speech in different formats differently for tax purposes, and that such disparate treatment violates the First Amendment as it places unjustified burdens on the press." *See McGraw–Hill v. State Tax Comm'n*, 146 A.D.2d 371, 541 N.Y.S.2d 252 (1989), *aff'd*, 75 N.Y.2d 852, 552 N.Y.S.2d 915, 552 N.E.2d 163 (Ct.App.1990); *Oklahoma Broadcasters Ass'n v. Oklahoma Tax Comm'n*, 789 P.2d 1312 (Okla.1990). Both courts applied strict scrutiny review solely because differential treatment between the print and broadcast media existed. *McGraw–Hill*, 541 N.Y.S.2d at 255; *Oklahoma Broadcasters*, 789 P.2d at 1316. We believe, however, that the subsequent holding by the Supreme Court in *Leathers* controls the decision.

tronic publishers while the Arkansas tax upheld in *Leathers* applied to 100 cable television operators, a number large enough to prevent the danger of censorship.[7] The Court explained in *Leathers* that a tax scheme that targets a small number of speakers runs the risk of affecting only a limited range of views and distorting the market for ideas. *Id.* at 448, 111 S.Ct. at 1444. However, in this case, the electronic media are not the only speakers taxed under the tax scheme. The cable industry and the telecommunication services are also taxed. *See* Tax Code §§ 151.0101(a)(2), (6). Furthermore, the information services tax does not target only the electronic media, but also a wide range of other news services. *See* 34 Tex.Admin.Code § 3.342(a)(2) ("[I]nformation services" include services furnishing general or specialized news "by printed, mimeographed, electronic, or electrical transmission, or by utilizing wires, cable, radio waves, microwaves, satellites, fiber optics, or any other method now in existence or which may be devised...."). Thus the tax does not appear to target a select few members of the press to bear the full burden of the tax. *See Magazine Publishers of Am. v. Department of Revenue*, 151 Pa.Cmwlth. 592, 618 A.2d 1056, 1060 (1992) (determining that a generally applicable sales tax that exempted newspapers but not magazines did not single out magazines for special treatment).

Moreover, the cases in which the Supreme Court found a state tax scheme to target a small group within the press involved discrimination within the same medium. An Arkansas sales tax was held unconstitutional because it targeted a few general interest magazines while religious, sport, trade, and professional magazines were exempted. *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 229, 107 S.Ct. 1722, 1727, 95 L.Ed.2d 209 (1987). Similarly, a Minnesota special use tax on ink and paper was unconstitutional in part because it targeted a small number of newspapers with large productions while exempting newspapers with smaller productions, which remained under the annual $100,000 ink and paper consumption exemption. *Minneapolis Star*, 460 U.S.

at 591–92, 103 S.Ct. at 1375. Finally, a tax that fell on newspapers with a circulation of more than 20,000 copies per week violated the First Amendment. *Grosjean*, 297 U.S. at 251, 56 S.Ct. at 449. As we have already concluded, such intramedia discrimination is not present here.

We conclude that the tax is not constitutionally suspect as applied to Reuters; therefore, the newspaper exemption's format distinctions are not subject to strict-scrutiny review. We hold that the tax scheme as applied does not infringe the First Amendment.

### 2. As Applied: Article I, § 8

■ Because we have found that, as applied to Reuters, strict scrutiny review is not triggered under the minimum safeguards provided by the First Amendment, we must now determine whether Article I, § 8 of the Texas Constitution provides greater protection than the First Amendment in this context. With respect to the minimum safeguards of Article I, § 8, we rely on Supreme Court precedent which holds that being taxed differently from other media does not by itself raise First Amendment concerns. *See Leathers*, 499 U.S. at 444, 111 S.Ct. at 1442. Reuters argues that Article I, § 8 is broader because it prohibits tax laws that, as applied, discriminate among members of the press whether of the same medium or different media. Reuters essentially argues that unequal taxation of different members of the media based on format requires strict-scrutiny review under Article I, § 8.

The Texas Supreme Court has held that, in some respects, our state's free speech clause is broader than the First Amendment. *Ex parte Tucci*, 859 S.W.2d 1, 5 (Tex.1993); *Davenport*, 834 S.W.2d at 8. Article I, § 8 provides:

> Every person shall be at liberty to speak, write, or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press. In prosecutions for the pub-

---

**7.** Reuters cites to the record an affidavit in which Reuters' senior sales executive names, as Reuters' competitors in Texas, six information services with a general news interest.

lications of papers, investigating the conduct of officers, or men in public capacity, or when the matter published is proper for public information, the truth thereof may be given in evidence. And in all indictments for libels, the jury shall have the right to determine the law and the facts, under the direction of the court, as in other cases.

The language of Article I, § 8 is broader than the First Amendment. It grants an affirmative right to individuals to speak, write, or publish their opinions, but holds the speaker responsible for the abuse of this privilege. In considering the broader guarantee of Article I, § 8, the Texas Supreme Court stated, "The presumption in all cases under section eight is that pre-speech sanctions or 'prior restraints' are unconstitutional." *Davenport,* 834 S.W.2d at 9. Thus, the broader protection provided in the language of Article I, § 8 appears to address laws that enjoin speech altogether.

 However, economic regulation in the form of tax classifications under a generally applicable sales tax does not operate as a prior restraint on Reuters' speech.[8] Therefore, we believe that with respect to tax classifications under a generally applicable sales tax, Article I, § 8 is no broader than the First Amendment guarantee. The federal test adopted by the United States Supreme Court provides adequate protection for the press and recognizes the balance between the legislature's broad discretion in making tax classifications and the right of the press not to have classifications that suppress the expression of particular ideas or viewpoints. This balance is appropriate for tax laws, which are afforded special consideration. *See Vinson,* 773 S.W.2d at 266. Therefore, we hold that the tax as applied to Reuters did not violate its rights under Article I, § 8 of the Texas Constitution.

### 3. Facial Challenge

 Reuters argues that the tax provisions are invalid on their face because they are content based. The newspaper exemption defines a newspaper in part as disseminating "news of a general character and of a general interest." Tax Code § 151.319(f). Under subsection (1), an information service is defined in part as a service which furnishes "general or specialized news ... including financial information." Tax Code § 151.0038(1). The State argues that Reuters falls under section 151.0038(2) as an electronic data retrieval service, which makes no reference to content, and therefore we need not address this constitutional issue. The State also argues that the format requirements of the newspaper exemption were the sole basis for Reuters' taxation.

We must determine whether Reuters may make a facial challenge to tax provisions that we conclude were constitutionally applied to Reuters. In its argument that the tax scheme was unconstitutional as applied, Reuters argues that its speech is the same as newsprint newspapers, and that it has been taxed because of the format distinctions in the newspaper exemption. Moreover, the joint stipulation of facts provides that subscribers receive general news in any particular service subscribed. Therefore, Reuters does not argue the tax has been applied against it based on the content of its speech.

Reuters has standing to challenge the newspaper exemption because a live controversy exists over the right to recover $318,-819.22 paid by Reuters under a tax scheme it alleges is unconstitutional. *See Texas Monthly, Inc. v. Bullock,* 489 U.S. 1, 8, 109 S.Ct. 890, 895, 103 L.Ed.2d 1 (1989). However, we limit this facial challenge to the newspaper exemption as it operates with electronic data retrieval services under section 151.0038(2). We do not consider a facial challenge to the newspaper exemption as it operates with an information service defined in subsection (1) as furnishing general or specialized information.

**8.** The United States Supreme Court defined a prior restraint as a term used "to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States,* —— U.S. ——, ——, 113 S.Ct. 2766, 2771, 125 L.Ed.2d 441, 450 (1993) (citing M. Nimmer, *Nimmer on Freedom of Speech* § 4.03, at 4–14 (1984)).

Reuters argues in its ninth and tenth points of error that the Tax Code precludes consideration of its claims under section 151.0038(2). Section 112.053 of the Tax Code states that issues in a protest suit are "limited to those arising from the reasons expressed in the written protest as originally filed." Tax Code § 112.053. Reuters' protest letter attacks the constitutionality of subsection (1), not subsection (2). Reuters concludes that the State cannot argue the applicability of section 151.0038(2), relying on *Nu–Way Oil Co. v. Bullock*, 546 S.W.2d 336 (Tex.Civ.App.—Austin 1976, no writ).

In *Nu–Way Oil*, this Court held that one of the purposes of the protest statute is to prevent taxpayers, after filing suit, from asserting other or different grounds from those stated in the protest. 546 S.W.2d at 341. The protest statute prevents a taxpayer from "taking advantage of the collection agency upon such trial by 'changing horses,' so to speak, and having adjudicated grounds or reasons which the agency had not therefore been called upon or had opportunity to determine." *Id.* Reuters argues this principle of fairness prevents the State from raising the applicability of section 151.0038(2) and unfairly surprising the taxpayer. We disagree.

In *Nu–Way Oil*, we concluded that the essential purpose of a written protest is to give the Comptroller an opportunity to review the reasons given for the protest and, if the protest is rejected, to defend a suit by the taxpayer upon the issues raised in the written protest. *Id.* The parties do not dispute that Reuters is subject to the tax as an information service; the issue is the constitutionality of the tax. The applicability of section 151.0038(2) is a *defense* by the State in response to Reuters' protest letter in order to limit the scope of constitutional inquiry of the tax scheme.

█ Issues in a tax protest suit are tried de novo. Tax Code § 112.154. The State argued in its motion for partial summary judgment that Reuters was taxable as an electronic data retrieval service; therefore, the issue of the applicability of section 151.0038(2) was properly before the court. The trial court granted the State's motion on all grounds. Based on the joint stipulation of facts, the trial court could properly conclude that Reuters was equally taxable as an electronic data retrieval service.[9] We overrule the ninth and tenth points of error, and consider Reuters' facial challenge to the newspaper exemption as it relates to electronic data retrieval services under section 151.0038(2).

█ Official scrutiny of the content of publications as the basis for imposing a tax is totally incompatible with the First Amendment guarantee of freedom of the press. *Arkansas Writers' Project*, 481 U.S. at 230, 107 S.Ct. at 1728; *see also Simon & Schuster, Inc. v. Crime Victims Bd.*, 502 U.S. 105, 115, 112 S.Ct. 501, 507–08, 116 L.Ed.2d 476, 486–87 (1991). In *Arkansas Writers' Project*, the Supreme Court held that the sales tax on general interest magazines was content based. Under that tax scheme, an enforcement authority had to "necessarily examine the content of the message that is

---

9. Both motions for partial summary judgment relied on the Joint Stipulation of Facts. Fact number twenty-one states:

Under its services, Reuters America subscribers retrieve and read the latest news information available on a subject covered by Reuters. According to a Reuters' brochure "Let Reuters Put It All Together For You" (Exhibit "A"), a Reuters monitor provides "Information retrieval at its best ... at a price you can afford." This same brochure states beside a picture of a Reuters printer, "The Reuter monitor has the facility to print out retrieved information." The brochure goes on to say, "The Reuter Monitor is a sophisticated but simple-to-use information retrieval system designed to provide a variety of data on a single terminal." Reuters, however, does not carry historical data on any of its monitor or satellite services. Reuters' subscribers can only retrieve current news and quotes.

Words shall be read in context and construed according to the rules of grammar and common usage. Tex.Gov't Code Ann. § 311.011(a) (West 1988). Section 151.0038(2) defines information service as "electronic data retrieval or research." The stipulated fact above demonstrates that subscribers retrieve the news information Reuters provides. Moreover, this information is retrieved electronically. Because datum denotes "detailed information of any kind", *see Webster's Third New International Dictionary* 577 (Philip B. Gove ed., 1961), section 151.0038(2) must cover current news or information as well as historical data.

conveyed" in order to determine whether a magazine was subject to the sales tax. *Arkansas Writers' Project*, 481 U.S. at 230, 107 S.Ct. at 1728. In contrast, the tax on electronic data retrieval services does not permit the Comptroller to discriminate on the basis of content.

The basis for the different tax treatment of electronic data retrieval services and newspapers rests on the format requirements of the newspaper exemption. The Iowa Supreme Court rejected a facial challenge to its tax scheme by various magazine publishers who argued the newspaper exemption was content based. *See Hearst v. Iowa Dep't of Revenue & Fin.*, 461 N.W.2d 295, 303 (Iowa 1990), *cert. denied*, 499 U.S. 983, 111 S.Ct. 1639, 113 L.Ed.2d 735 (1991). The Iowa Administrative Code defined a newspaper as one that is "printed and distributed daily, weekly, or at some other regular and usually short interval and that *generally contains news, articles of opinion (editorials), features, advertising, or other matter regarded as of current interest.*" *See id.* at 300 (citing 701 Iowa Admin.Code 18.42(1) (1981)) (emphasis added). The Iowa court held that while the classification of the writing was a consideration, the form and frequency of the publication were the primary factors for determining whether a publication qualified for the exemption. *Id.* at 303. Therefore, the court found no threat of censorship. *Id.*

Courts in Pennsylvania and Maryland have made similar holdings. *See Magazine Publishers of Am. v. Department of Revenue*, 151 Pa.Cmwlth. 592, 618 A.2d 1056, 1060 (1992) [10] (upholding the language of a newspaper exemption distinguishing newspapers from magazines because the newspaper exemption was based on format and frequency of publication, not upon content) [11]; *Bancroft Info. Group, Inc. v. Comptroller,* 91 Md.App. 100, 603 A.2d 1289, 1294 (1992) (holding that deni-al of exemption was not based on what was published in newsletter, but on how many times it was circulated); *see also Gallacher v. Commissioner of Revenue Serv.*, 221 Conn. 166, 602 A.2d 996, 1002 (1992) (determining that the trial court's denial of a newspaper exemption was not based on the content of the plaintiffs' publications but rather on the absence of most features usually found in newspapers).[12]

Reuters argues that the mere fact that one of the factors mentions news "of a general character and of general interest" is sufficient to make the tax content based, even if the format requirements would otherwise exclude Reuters from the exemption. Reuters relies on state court decisions from Indiana, Tennessee, and Florida that conflict with *Hearst*. *See Emmis Publishing Corp. v. Indiana Dep't of State Revenue*, 612 N.E.2d 614, 620 (Ind.Tax Ct.1993) (deciding that a rule defining newspaper in part as "published for the dissemination of news of importance and of current interest to general public, general news of the day, and information of current events" required a publication to meet content-based criteria to be considered a newspaper for purposes of exemption); *Department of Revenue v. Magazine Publishers of Am.*, 604 So.2d 459, 462 (Fla.1992) (holding that a tax was content based because the fifth requirement of the newspaper exemption required the evaluation of the publication's contents to determine whether it contained "reports of current events and matters of general interest which appeal to a wide spectrum of the general public"); *Newsweek v. Celauro*, 789 S.W.2d 247, 249 (Tenn. 1990) (concluding that the newspaper exemption was not content neutral because publication must, among other things, "contain matters of general interest and reports of current events"), *cert. denied*, 499 U.S. 983, 111 S.Ct. 1639, 113 L.Ed.2d 734 (1991).

---

**10.** We note that the court in *Magazine Publishers* also rejected the argument that the tax violated their own Pennsylvania Constitution, Article I, § 7, which petitioners argued provided broader protection than their rights under the First Amendment. *See* 618 A.2d at 1061.

**11.** The newspaper exemption in the Pennsylvania Tax Code provided: "For purposes of this section, the term 'newspaper' shall mean a 'legal newspaper' or a publication containing *matters of general interest and reports of current events* which qualifies as a 'newspaper of general circulation' qualified to carry a 'legal advertisement' as those terms are defined in 45 Pa.C.S. § 101 (relating to definitions)...." *See Magazine Publishers*, 618 A.2d at 1058 n. 2.

**12.** In *Gallacher*, "newspaper" was not defined by statute or rule.

With respect to electronic data retrieval services, content cannot be a factor in the Comptroller's decision to deny the newspaper exemption; the exemption is automatically denied on the basis of format distinctions. Moreover, the state court cases upon which Reuters relies present a much closer case than is presented here. The cases cited by Reuters address the much finer distinction that exists between newspapers and other print media. The exemption here makes a more recognizable format distinction between electronic data retrieval services and the print media.

Under Article I, § 8 and the First Amendment, we reject Reuters' facial challenge to the newspaper exemption as it relates to electronic data retrieval services. We overrule points of error one through four.

### B. Equal Protection

In points of error five through eight, Reuters contends that the tax provisions violate the equal protection clauses of both the federal and state constitutions. U.S. Const. amend. XIV; Tex. Const. art. I, § 3. Reuters argues that there is no meaningful distinction between Reuters' product and a newspaper.

Under the Fourteenth Amendment, because Reuters' freedom of speech is not infringed, the equal protection challenge is reviewed under the rational basis test.[13] *See Regan,* 461 U.S. at 548, 103 S.Ct. at 2002 (declining to apply strict scrutiny review under equal protection analysis to tax classification after concluding that First Amendment rights were not violated); *Hearst,* 461 N.W.2d at 305. Reuters argues, however, that Article I, § 3 of the Texas Constitution requires strict scrutiny review in this context because the language in Article I, § 3 is broader than the Fourteenth Amendment. Article I, § 3 provides: "All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services."[14] Thus, Reuters contends, even if strict scrutiny is inappropriate under the First Amendment, it is appropriate under Article I, § 3.

Under Article I, § 3, the level of review under equal protection depends on whether a fundamental right, such as freedom of speech, has been infringed. *See Spring Branch,* 695 S.W.2d at 559. We have already concluded that Article I, § 8 has not been infringed because the generally applicable sales tax does not pose the threat of suppressing particular ideas or viewpoints; therefore, we do not apply strict scrutiny review under equal protection analysis.

We do recognize, however, that the rational basis test under Article I, § 3 may be a more stringent test than under the federal rational basis test. *See Whitworth v. Bynum,* 699 S.W.2d 194, 195–97 (Tex.1985) (holding the Texas Automobile Guest Statute unconstitutional under Article I, § 3 though statute earlier upheld by *Silver v. Silver,* 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929)); *Texas Workers' Compensation Comm'n v. Garcia,* 862 S.W.2d 61, 75 n. 5 (Tex.App.— San Antonio 1993, writ granted); *but see Rose v. Doctors Hosp.,* 801 S.W.2d 841, 846 (Tex.1990) ("Texas cases echo federal standards when determining whether a statute violates equal protection under either provision." (citing *Spring Branch,* 695 S.W.2d

**13.** Reuters relies on *Oklahoma Broadcasters,* in which the Oklahoma Supreme Court held that a sales tax which applied to radio and television sales of licensing agreements, advertising and broadcasting equipment, but exempted newspapers' sales of the same items, violated the First Amendment and the Equal Protection Clause. The court in *Oklahoma Broadcasters* extended the application of strict scrutiny review in *Minneapolis Star* and *Arkansas Writers' Project*—in which there was differential treatment between members of the print media—to differential treatment between the print and broadcast media. *See Oklahoma Broadcasters,* 789 P.2d at 1316. We already concluded that *Oklahoma Broadcasters* is controlled by the holding in *Leathers* that differential treatment among members of the press does not by itself require strict scrutiny review. Because we have concluded strict scrutiny has not been triggered under free speech concerns, we do not apply strict scrutiny review under equal protection grounds.

**14.** The federal equal protection clause provides that no State shall "make or enforce any law which shall ... deny any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

at 559–60)). We nevertheless conclude that the newspaper exemption withstands the rational basis test under Article I, § 3.

In reviewing a tax classification when fundamental rights are not affected, the tax classification must be rationally related to a legitimate state interest. *H.L. Farm Corp. v. Self,* 877 S.W.2d 288, 290 (Tex.1994); *see Hurt v. Cooper,* 130 Tex. 433, 110 S.W.2d 896, 901 (1937) ("[C]ourts can interfere only when it is made clearly to appear that there is no reasonable basis for the tax classification."). In this case, the State offers two state interests for the distinction between electronic news services like Reuters and newspapers: (1) the State has an interest in encouraging the reading of newspapers and thereby enhancing the general knowledge and literacy of Texans; and (2) it is administratively difficult and impractical to collect a sales tax on newspapers because the Comptroller would have to perform tax audits on hundreds of carriers who sell newspapers on a daily or weekly basis. Administrative convenience may be a justifiable basis for a difference in treatment between different taxpayers. *Spencer Gifts, Inc. v. Bullock,* 766 S.W.2d 593, 599 (Tex.App.—Austin 1989, no writ) (citing *Carmichael v. Southern Coal & Coke Co.,* 301 U.S. 495, 513, 57 S.Ct. 868, 874, 81 L.Ed. 1245 (1936)); *see Hearst,* 461 N.W.2d at 306. Similarly, promoting literacy for its citizens is a legitimate state interest. *See id.*

The classification that distinguishes Reuters as an electronic news service from newspapers is rationally related to these legitimate state interests. With respect to fostering literacy, the tax scheme exempts an inexpensive form of print publication that is readily accessible to many members of the public. In contrast, Reuters' electronic services provide their news information in a more expensive and sophisticated manner, requiring the use of computer monitors. *See Medlock v. Leathers,* 311 Ark. 175, 842 S.W.2d 428, 431–32 (1992), *cert. denied,* — U.S. ——, 113 S.Ct. 2929, 124 L.Ed.2d 680 (1993) (deciding that a distinguishable classification existed between cable television and satellite services because cable required a more sophisticated transmission system and

substantial investment than satellite transmission). Moreover, it is administratively difficult and not economical to collect the tax on newspapers due to the nature of their distribution. In contrast, the joint stipulation of facts states that Reuters' services are provided under written contracts with an average length of one to two years. Thus, we conclude that the distinguishing classification between newspapers and electronic news services like Reuters are based on real and substantial differences that are rationally related to legitimate state interests.

We hold that the tax scheme as applied to Reuters does not violate the equal protection clauses of Article I, § 3 of the Texas Constitution or the Fourteenth Amendment of the United States Constitution. We overrule points of error five through eight.

## CONCLUSION

We conclude that the Tax Code was constitutionally applied to Reuters. The State did not violate Article I, § 8 or the First Amendment by taxing Reuters as an information service while exempting newspapers. As applied, the tax provisions did not pose the threat of suppressing particular ideas or viewpoints and are not subject to strict scrutiny review: (1) the tax was not based upon the content of Reuters's speech, but upon format requirements; (2) the tax did not single out the press alone, but was a generally applicable sales tax; and (3) the tax did not single out a small group of the press. With respect to Reuters' facial challenge to the newspaper exemption—limited to electronic data retrieval services—we conclude that the newspaper exemption is not based on the content of taxpayer's speech but on format requirements. Similarly, taxing information services while exempting newspapers does not violate the federal or state equal protection clauses. The newspaper exemption is rationally related to promoting literacy and administrative economy.

We affirm the trial-court judgment.