■ In the Matter of GARY M. HOLBERT, Appellant, v NEW YORK STATE TEACHERS' RETIREMENT SYSTEM et al., Respondents. [840 NYS2d 655]—

Mercure, J.P. Appeal from a judgment of the Supreme Court (Meddaugh, J.), entered October 16, 2006 in Sullivan County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent New York State Teachers' Retirement System excluding certain payments in calculating the amount of petitioner's final average salary.

Petitioner was the Superintendent of the Fallsburg Central School District from 1996 to 2003. In 1999, petitioner and the school district entered into a contract providing that petitioner's "base annual salary" for the 1999-2000 school year would be $91,000. The contract also stated that petitioner would receive a $5,000 tax sheltered annuity, as well as transportation and expense reimbursement and the option of receiving health insurance benefits or, in lieu thereof, a buyout for the waiver of health insurance coverage. Notably, the contract expressly provided that "[petitioner] will be given the option to place any compensation, tax sheltered annuity, health buyout, mileage, etc. *in his regular salary that would be . . . part of the Teacher's Retirement System*" (emphasis added).

The following year, petitioner and the school district agreed in a new contract that his "base annual salary" for the 2000-2001 school year would be $118,855. In December 2001, the parties renegotiated, agreeing that petitioner would be paid a "base annual salary" of $130,320 for the 2001-2002 school year, $140,816 for the 2002-2003 school year, and $23,969 for the period from July 1, 2003 to August 31, 2003 (corresponding to an annual salary of $143,816). Neither the 2000 nor 2001 contract contained any provision for travel reimbursement, tax sheltered annuity or health insurance buyout.[1] Petitioner retired on September 1, 2003.

Respondent New York State Teachers' Retirement System (hereinafter respondent) thereafter sought clarification from the school district of the amount of petitioner's base salary and fringe benefits during the relevant time period. Although the school district provided some information, it offered no explanation for the disappearance of the benefits in the later contracts or for the unusually large 2000-2001 raise. Respondent then issued a preliminary determination in August 2005, concluding that $72,939 in excess salary increases received by petitioner during the 2000-2004 school years were not includable in the calculation of his three-year final average salary (*see* 21 NYCRR 5003.1). In particular, the combination of an approximately 30% raise in reported salary for the third year preceding petitioner's retirement and the sudden contractual absence of other nonreportable benefits led respondent to infer that the school district had agreed with petitioner to exchange separately listed benefits for a large "regular salary" increase in anticipation of his retirement. Rather than credit petitioner with the 30% raise

---

1. Petitioner was evidently provided with health insurance coverage at certain points, although that coverage was not described in the contracts or included as part of his salary.

reported, respondent recalculated petitioner's 2000-2001 salary by crediting him with a 7.6% raise—the next largest salary increase for an administrator in petitioner's district—and computed his salary for the following years by applying the same percentage raises actually received by petitioner to his recalculated 2000-2001 salary.[2] Upon petitioner's challenge to the preliminary determination, respondent issued a final determination adhering to the reduction of petitioner's final three years' average salary by $72,939 and awarding benefits based on the reduced average.

Petitioner then commenced this CPLR article 78 proceeding, seeking to annul respondent's determination and an order directing that $69,274 be reinstated in determining petitioner's final average salary. Supreme Court dismissed the petition and petitioner now appeals.

We affirm. As relevant here, Education Law § 501 (11) (b) provides: " 'Final Average Salary' shall mean the average regular compensation earned as a teacher during the three years of actual service immediately preceding his [or her] date of retirement . . . *exclusive of* any lump sum payments for sick leave, annual leave or *any other form of termination pay*; provided, however, *if the compensation earned in any [12] months exceeds that of the previous [12] months by more than [20%], the amount in excess of [20%] shall be excluded in the computation of final average salary*" (emphasis added). The purpose of section 501 (11) "is to prevent artificial inflation of final average salary by payments made in anticipation of retirement" (*Matter of Moraghan v New York State Teachers' Retirement Sys.*, 237 AD2d 703, 704 [1997]; *see Matter of Horowitz v New York State Teachers' Retirement Sys.*, 293 AD2d 861, 861 [2002], *lv denied* 98 NY2d 614 [2002]). Thus, in determining what constitutes average regular compensation within the meaning of the statute, "we must look to the substance of the transaction and not to what the parties may label it" (*Matter of Van Haneghan v New York State Teachers' Retirement Sys.*, 6 AD3d 1019, 1021 [2004] [citations and internal quotation marks omitted]; *see Matter of Davies v New York State & Local Police & Fireman Retirement Sys.*, 259 AD2d 912, 914 [1999], *lv denied* 93 NY2d 810 [1999]). Moreover, we will uphold respondent's determina-

---

**2.** There is no dispute that petitioner received a 9.6% raise in the 2001-2002 school year, an 8% raise in the 2002-2003 school year and a 2.1% raise in the 2003-2004 school year. We note that inasmuch as respondent applied those percentage raises to the recalculated 2000-2001 salary, the adjustment to petitioner's final average salary essentially flowed from that initial recalculation.

tions in this regard, as well as its calculations of a retiree's final average salary, so long as they are not arbitrary and capricious (*see Matter of Cooper v New York State Teachers' Retirement Sys.*, 19 AD3d 724, 726 [2005]; *Matter of Moraghan v New York State Teachers' Retirement Sys., supra* at 705).

In challenging respondent's calculation of his final average salary here, petitioner asserts that respondent erred in calculating his 1999-2000 salary, which was received prior to his final three years of employment but used as a basis for determining the percentage increase in his salary received for the third year preceding retirement, the 2000-2001 school year. Respondent determined that petitioner's 1999-2000 salary was $91,000, and that his $118,855 salary received in 2000-2001 represented a 30.6% raise.[3] Petitioner asserts that his $5,000 tax annuity payment should have been included in his 1999-2000 salary, bringing the total salary for that year to $96,000 and resulting in a percentage raise of 23.8% for the following year. Petitioner concedes that even if the $5,000 annuity is considered regular salary under the 1999 contract, the raise of 23.8% exceeds the statutory maximum of 20% (*see* Education Law § 501 [11] [b]) by $3,655. He argues, however, that this amount is the *only* deduction that should have been made to his final average salary, and that respondent acted arbitrarily in crediting him with only a 7.6% raise in 2000-2001 and then applying the actual percentage raises received to his recalculated salary. We disagree.

With respect to the exclusion of the $5,000 tax annuity from petitioner's regular salary during the 1999-2000 school year, respondent's determination is supported by the face of petitioner's contract with the school district. Article V (A) (1) of that agreement expressly provided that petitioner's "base annual salary" for that year would be $91,000 and listed the $5,000 annuity as an additional payment in a separate subsection. Although, as noted above, the contract also permitted petitioner "to place any compensation, tax sheltered annuity, health buyout, mileage, etc. in his regular salary that would be . . . part of the Teacher's Retirement System," that agreement did not alter "the substance of the transaction" (*Matter of Van Haneghan v New York State Teachers' Retirement Sys., supra* at 1021). In any event, employers and employees cannot agree to alter the rights and obligations of either with respect to the retirement system (*see New York Pub. Lib., Astor, Lenox &*

---

**3.** The 30.6% raise is calculated as follows, using a 1999-2000 salary or $91,000 and petitioner's reported salary for 2000-2001 of $118,855: ($118,855 − $91,000 = $27,855) / $91,000 = 30.6%.

*Tilden Founds. v City of New York*, 275 App Div 307, 311 [1949], *affd* 300 NY 726 [1950]). Inasmuch as respondent's regulations expressly provide that "[r]egular salary earned shall exclude . . . payments which are not part of the salary base" (21 NYCRR 5003.1 [a]), respondent did not act arbitrarily and capriciously in determining that the annuity should be excluded and that petitioner's base salary for 1999-2000 was $91,000, despite the claims of petitioner and the school district to the contrary (*see Matter of Cooper v New York State Teachers' Retirement Sys., supra* at 726; *Matter of Wallon v New York State Teachers' Retirement Sys.*, 294 AD2d 644, 645 [2002]).

Similarly, we cannot say that respondent acted irrationally in concluding that the disproportionate raise constituted termination pay given in anticipation of retirement (*see Matter of Cooper v New York State Teachers' Retirement Sys., supra* at 725-726; *Matter of Moraghan v New York State Teachers' Retirement Sys., supra* at 704-705; *Matter of Simonds v New York State Teachers' Retirement Sys.*, 42 AD2d 470, 472 [1973]; *see also Matter of Adler v New York State Teachers' Retirement Sys.*, 188 AD2d 732, 733 [1992]). In particular, we note the above-quoted language in the 1999 contract evincing the intent of the school district and petitioner to permit him to hide nonregular compensation from respondent by reporting it as "regular salary," and the 30.6% raise for the following year coupled with the disappearance of both the quoted contractual language and the listed nonregular benefits that petitioner sought permission to report as regular salary.[4] Moreover, the timing of the large raise, which materialized on the eve of retirement and was disproportionate to any other raises received by petitioner, had the effect of inflating petitioner's final average salary, but the contracts between petitioner and the school district did not obligate him to assume any additional duties to account for the raise. Finally, the 30.6% raise was disproportionate to that received by other administrators in petitioner's district for the 2000-2001 school year, the highest of which was 7.6%.

Inasmuch as respondent could not lawfully credit petitioner with a raise of over 20% and given the evidence supporting a conclusion that the raise represented an attempt to artificially inflate petitioner's salary, we cannot say that respondent acted arbitrarily and capriciously by crediting petitioner with the next highest percentage raise awarded in the district for the 2000-2001 school year and with the actual percentage raises he was awarded for subsequent years (*see Matter of Cooper v New York*

4. Petitioner concedes that he did forego the benefits previously listed in the 1999 contract for all or a significant portion of his final three years.

*State Teachers' Retirement Sys., supra* at 726). Although, as petitioner argues, there may have been other methods to calculate the final average salary, "[a]t best, petitioner has shown that a rational basis exists for respondent to have exercised its judgment to reach a different result, which is insufficient to merit judicial interference" (*Matter of Moraghan v New York State Teachers' Retirement Sys., supra* at 705).

In sum, because respondent's determination is supported by a rational basis and is not arbitrary and capricious, Supreme Court properly dismissed the petition. Petitioner's arguments, to the extent not addressed herein, have been considered and found to be lacking in merit.

Carpinello, Rose, Lahtinen and Kane, JJ., concur. Ordered that the judgment is affirmed, without costs.