■ In the Matter of PORT AUTHORITY POLICE BENEVOLENT AS-SOCIATION, INC., et al., Petitioners, v LAURA L. ANGLIN, as Deputy Comptroller of the State of New York, et al., Respondents.
[863 NYS2d 298]—

Rose, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondents which denied petitioner Barry McCarthy's application for recalculation of his final average salary.

Petitioner Barry McCarthy (hereinafter petitioner) was employed as a sergeant with almost 30 years of service by the Port Authority Police Department of New York and New Jersey. After the terrorist attack of September 11, 2001, all vacation and days off were cancelled, and Port Authority police officers, including petitioner, were required to work daily 12-hour shifts.

---

Pursuant to the applicable collective bargaining agreement, petitioner was paid eight hours at his regular base pay plus a premium payment of eight hours at time and a half for each vacation day he was required to work. Since he was then working 12-hour shifts, petitioner was also paid time and a half for four hours of overtime.

When petitioner retired in 2003, respondent New York State and Local Police and Fire Retirement System calculated his final average salary to be $166,432.83, a figure which did not include any of the premium payments he had received for having to work instead of taking vacation days. At the hearing held pursuant to petitioner's request for recalculation of this amount, the Hearing Officer found that the premium payments for lost vacation days were properly excluded from the calculation of his final average salary. Respondent Deputy Comptroller adopted the decision of the Hearing Officer and denied petitioner's application for recalculation of his final average salary. Petitioners then commenced this CPLR article 78 proceeding challenging the Deputy Comptroller's determination.

We initially note that the underlying facts are not the subject of any meaningful dispute, and the petition presents an issue involving statutory interpretation rather than a question of substantial evidence. As such, the matter should not have been transferred to this Court (*see Matter of McGraw-Hill, Inc. v State Tax Commn.*, 146 AD2d 371, 374 n 3 [1989], *affd* 75 NY2d 852 [1990]; *Matter of Maliszewski v Regan*, 144 AD2d 170, 171 [1988]). However, we will retain jurisdiction (*see id.*; *Matter of Consumer Protection Bd. of State of N.Y. v Public Serv. Commn.*, 85 AD2d 321, 323 [1982], *appeal dismissed* 57 NY2d 673 [1982]).

Respondents' determination not to credit the premium payments that petitioner received when he was required to work vacation days as the result of a national emergency is based on the finding that these payments are a form of accumulated vacation credit and, as such, cannot be included in the calculation of his final average salary (*see* Retirement and Social Security Law § 302 [9] [d]; § 431 [1]). As the Comptroller is vested with exclusive authority to determine applications for retirement benefits within the meaning of the applicable statutes, we will uphold a determination of what constitutes a retiree's final average salary as long as it is not irrational (*see Matter of Holbert v New York State Teachers' Retirement Sys.*, 43 AD3d 530, 532-533 [2007]; *Matter of Cooper v New York State Teachers' Retirement Sys.*, 19 AD3d 724, 726 [2005]; *Regan v Heimbach*, 91 AD2d 71, 72 [1983], *lv denied* 58 NY2d 610 [1983]).

Retirement and Social Security Law § 302 (9) (d) and § 431

(1) expressly exclude lump-sum payments for accumulated vacation credit, and we have held that this exclusion applies even though the payments are made biweekly rather than in a lump sum upon retirement (*see Matter of Hoffman v New York State Policemen's & Firemen's Retirement Sys.*, 142 AD2d 854, 855 [1988]). Here, the record is clear that the payments that petitioner seeks to have included in his final average salary were made pursuant to the vacation provisions of a collective bargaining agreement that were invoked when his vacation days were cancelled. These premium payments were made in lieu of vacation and in addition to the regular, straight rate of pay that he received for working his normal eight-hour shift and the overtime pay he received for the hours he worked each day after his normal shift.

Petitioners' contention that these vacation payments must be regarded as "overtime," as that term is used in General Municipal Law § 90, is unpersuasive. While it is true that section 90 mandates the inclusion of "overtime compensation" in computing retirement benefits under certain circumstances, the statute's provisions are to be strictly construed (*see Matter of Murray v Levitt*, 47 AD2d 267, 269 [1975], *lv denied* 37 NY2d 707 [1975]). One express requirement of the statute is that the compensation be for "work in excess of [the employees'] regularly established hours of employment" (General Municipal Law § 90). The vacation payments made here were not for such work, but rather for the loss of time off from work. In other words, the effect of the vacation payments was to compensate petitioner for the loss of time when he would *not* have worked, rather than for work beyond his regular hours. In addition, while the applicable collective bargaining agreement required payment of a premium for such lost vacation time, it does not state that working a vacation day constitutes overtime work, but only that the lost vacation time shall be "paid at overtime rates" as defined elsewhere in the agreement.

Nor are we persuaded that vacation payments should be regarded as overtime because petitioner was ordered to work his vacation days due to a national emergency, unlike the situation in *Matter of Hohensee v Regan* (138 AD2d 812, 813-814 [1988], *lv denied* 72 NY2d 807 [1988]) where the applicant had voluntarily worked on vacation days. In *Hohensee*, we found the exclusion of the payments for unused vacation days to be rational (*id.* at 814). Here, however, just as in *Hohensee*, "vacation payments are not regular compensation" and "the cash equivalent [petitioner] received in lieu of his . . . vacation . . . was in addition to his regular compensation and thus extraordi-

nary" (*id.*). That a national emergency required petitioner to forgo his vacation time does not render the payments any less extraordinary. Further, inasmuch as the applicable statutes attach no significance to whether the extra compensation was for vacation time lost voluntarily or involuntarily, respondents' construction cannot be irrational merely for failing to draw such a distinction.

Accordingly, respondents' conclusion that such payments were compensation for lost accrued vacation credit, rather than for overtime work under General Municipal Law § 90, cannot be said to be irrational (*see Abbatiello v Regan*, 205 AD2d 1027, 1028 [1994], *lv denied* 84 NY2d 808 [1994]; *Matter of Maliszewski v Regan*, 144 AD2d at 171; *Matter of Hohensee v Regan*, 138 AD2d at 813-814).

Mercure, J.P., Lahtinen and Stein, JJ., concur.

Kavanagh, J. (dissenting). I must dissent. I see no difference between having to work when one is entitled to be on vacation and having to work overtime. Each involves additional time at work and each results in additional compensation for "work in excess of [the employee's] regularly established hours of employment" (General Municipal Law § 90). Simply put, I see no rational basis upon which to distinguish one from the other, and I believe that the payments that petitioner Barry McCarthy (hereinafter petitioner) received for having to work on vacation days as a result of the national emergency should be included in any computation of his final average salary.

There is no dispute that petitioner was entitled under the collective bargaining agreement to paid vacation, and he was also entitled to have the payments that he would have received while on vacation included in any computation of his final average salary. What is at issue here is whether that computation should also include any additional compensation that he received from having to work on days that he was entitled to be on vacation.

Initially, it should be noted that no claim has ever been made that petitioner did not work the hours in question or lose the vacation days to which he was otherwise entitled. Nor is there any suggestion that petitioner, by working these hours, was engaged in a scheme designed to manipulate the calculation of his final average salary so as to enhance the benefits that he would receive upon retirement (*see Matter of Hoffman v New York State Policemen's & Firemen's Retirement Sys.*, 142 AD2d 854, 855-856 [1988]; *see also Matter of Miller v New York State Teachers' Retirement Sys.*, 157 AD2d 890, 891 [1990]). In addition, these payments were all made pursuant to a comprehensive plan that was in place at the time petitioner was ordered to

work as a result of the parties' collective bargaining agreement (*see Matter of Shames v Regan*, 132 AD2d 743, 744 [1987]; *see also Matter of Bascom v McCall*, 221 AD2d 879, 880 [1995]), and none constituted a lump-sum payment for either sick leave, accumulated vacation credit or any form of termination pay (*see* Retirement and Social Security Law § 302 [9] [d]; § 431). In short, there is nothing in the record to indicate that these payments were made for any other reason than to properly compensate petitioner for work that he performed for the Port Authority Police Department of New York and New Jersey "in excess of [his] regularly established hours of employment" (General Municipal Law § 90).

Finally, in my view, it does not matter, as the majority appears to contend, whether these payments are classified as compensation "for the loss of time when [petitioner] would *not* have worked" or as payments for work performed by petitioner "beyond his regular hours" of employment. Either way, petitioner was given no choice in the matter and was required to be on the job and at the job site at a time when he was entitled to be on vacation. That fact established that these payments were compensation for additional work he performed for the Port Authority and, as such, should be included in the computation to determine his final average salary (*see Matter of Shames v Regan*, 132 AD2d at 745; *Matter of Green v Regan*, 103 AD2d 878, 878-879 [1984]; *Matter of Murray v Levitt*, 47 AD2d 267, 269 [1975]). The interpretation by respondents to the contrary is irrational and, in my view, should be annulled (*see Matter of Fay v Regan*, 97 AD2d 192, 196 [1983]).

Adjudged that the determination is confirmed, without costs, and petition dismissed.